377 S.E.2d 830

Fred BASHAM, et al.

v.

GENERAL SHALE.

Alfred L. FAULKNER, et al.

v.

GENERAL SHALE.

BATTERIES, INC., et al.

v.

GENERAL SHALE.

No. CC 979.

Supreme Court of Appeals of
West Virginia.

Dec. 21, 1988.

Rehearing Denied Feb. 22, 1989.

Ben B. White, III, Princeton, for appellant.

Robert A. Burnside, Jr., File, Payne, Sherer & Brown, Beckley, John M. Wood, Michael C. Lynch, Reed, Smith, Shaw & McCla, Washington, D.C., for appellee.

BROTHERTON, Justice:

The petitioners are the plaintiffs in three consolidated actions presently pending in the United States District Court for the Southern District of West Virginia. The petitioners have filed suit against General Shale Products Corporation, the respondents herein, alleging that General Shale manufactured defective bricks which were used in the construction of the petitioners' homes and places of business.[1] General

---

1. The petitioners allege that bricks on their homes, porches, patios, steps, barbeque grills, fireplaces, and chimneys have disintegrated and

Shale states that the bricks were sold to the petitioners at least six years ago and, in some cases, more than ten years ago. The defendant has moved for a dismissal of the action on grounds that the applicable statute of limitations has run and, consequently, the petitioners have no cause of action under the Uniform Commercial Code, W.Va.Code § 46–1–101, *et seq.*

Pursuant to the procedures outlined in W.Va.Code §§ 51–1A–1 *et seq.* (1981),[2] the United States District Court for the Southern District of West Virginia has certified the following questions to this Court for our determination:

1. Whether § 55–2–6a of the West Virginia Code constitutes the applicable statute of limitation where damages are sought due to a defective construction material product used in the actual construction of an improvement to real property causing such improvement to be in a defective and unsafe condition.

1(a). Whether § 55–2–6a of the West Virginia Code is to be read in *para materia* with West Virginia Code § 55–2–21 such that prior to the 1983 enactment of § 55–2–6a no statutory limitation period existed on such an action and therefore, the running of the action limitation period only commenced the day after § 55–2–6a came to be in effect.

2. Whether the "discovery rule" may extend or toll any applicable statute of limitations period if such rule's criteria are met regardless of whether an action sounds in sales contract or tort.

3. Whether, in an action involving progressively increasing property damage of a continuing nature due to the use of a defective construction material product any applicable statute of limitation would not commence to run until such time as the consumer becomes aware or should have become aware of the defective nature of the product where the product, by its very nature, is expected by consumers to be usable in the manner for which it is intended over long periods of time, where the product's defectiveness cannot be ascertained upon reasonable consumer inspection, and whether the damages caused by the defective product include damage to property other than just to the defective product itself and represent a dangerous condition threatening, or, which will threaten harm, to other persons and/or their property.

3(a). Whether the answer of the foregoing question concerning tolling of any statute of limitation under the stated circumstances would be different where the manufacturer of the defective product actually knew of or should have known of, the product's defectiveness for long term usage in the manner intended and failed to disclose such fact to the purchaser.

4. Whether, in an action involving a defective product seeking recovery for damage to the product itself, tort or "common law" theories are applicable rather than sales contract law without a sudden calamitous event causing damage to the product where the product is a structural component

that other damage, such as water leakage into the interior, has occurred as well.

**2.** West Virginia Code § 51–1A–1 (1981) provides:

The supreme court of appeals of West Virginia may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of appeals of this State.

of an improvement to realty, it decreases the structural integrity of the improvement, its defectiveness constitutes a continuous and worsening risk of harm creating a hazard of sudden calamitous damage to the product, the improvement as a whole, to other property of the consumer, other persons and their property, lowers both the improvement's market value and life expectancy and, where curing the defect would cause monetary loss to the consumer other than the economic loss in the product's intrinsic value, such as damage to other property.

5. Whether, in an action involving a defective product seeking recovery for damages due to harm caused property other than the defective product, tort or "common law" theories are applicable rather than sales contract law without a sudden calamitous event causing damage to the product or other property, where the product is a structural component of an improvement to realty, it decreases the structural integrity of the improvement, its defectiveness constitutes a continuous and worsening risk of harm creating a hazard of sudden calamitous damage to the product, the improvement as a whole, to other property of the consumer, other persons and their property, lowers both the improvement's market value and life expectancy and, where curing the defect would cause monetary loss to the consumer other than the economic loss in the product's intrinsic value, such as damage to other property.

6. When the owner of a building alleges that brick used in the construction of the building does not meet industry standards for water absorption, causing the brick to deteriorate gradually, and the owner seeks costs associated with having the brick replaced, is the owner's cause of action against the brick's manufacturer limited to a breach of warranty action under the Uniform Commercial Code?

7. Does section 55–2–6a of the West Virginia Code supercede section 2–725 of the Uniform Commercial Code and provide a ten-year statute of limitations for a suit by a building owner against the alleged manufacturer of brick used in the construction of the building, when the manufacturer did no more than make the brick and was not employed in the planning, design, surveying, observation or supervision of the construction or the actual construction of the building, and the suit seeks only economic damages associated with having allegedly substandard brick replaced?

8. In the context of a breach of implied warranty action for economic loss under the Uniform Commercial Code, does the bare invocation of the word "fraud," made without specificity, state a cause of action for fraud sufficient to avoid the limitations period of W.Va.Code § 46–2–725?

These eight questions require this Court to address three primary issues, only one of which we have not previously discussed.[3]

## I.

■ We are first asked to determine whether W.Va.Code § 55–2–6a (1988) pro-

---

**3.** In the discussion which follows, we will not attempt to respond to these lengthy and somewhat repetitive certified questions in the order in which they are presented to us. It is this Court's position that "upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answer-

ed." *City of Fairmont v. Retail, Wholesale, & Department Store Union, AFL–CIO*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980).

We note that certified questions one through five were submitted by the petitioners, while certified questions six through eight were submitted by the respondent, General Shale.

vides the applicable statute of limitations when a party seeks to recover damages from a manufacturer of allegedly defective construction materials used in the construction of an improvement to real property. West Virginia Code § 55–2–6a (1988) states that:

No action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property, or, to recover damages for any injury to real or personal property, or, for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property, may be brought more than ten years after the performance or furnishing of such services or construction: Provided, that the above period shall be tolled according to the provisions of section twenty-one [§ 55–2–21] of this article. The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of real property, whichever occurs first.

This is the first occasion this Court has had to discuss § 55–2–6a (1988), which was enacted by the West Virginia Legislature in 1983. Statutes such as § 55–2–6a (1988) have been enacted in many jurisdictions and are commonly referred to as "architects' and builders' statutes." The purpose behind these statutes is to limit the time within which actions can be brought against architects, engineers, and others in the construction industry who are responsible for, in the language of our statute, "the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property." *See* Annot., 93 A.L.R.3d 1242 (1979).

The petitioners have not alleged that the respondent brick manufacturer was in any way involved in the planning, design, surveying, observation, supervision of con-

struction, or the actual construction of the petitioners' homes or places of business. In light of the clear and unambiguous wording of this statute, and in the absence of evidence that our Legislature intended for the manufacturers of construction materials to be included within its parameters, we must find that the ten-year statute of limitations in § 55–2–6a (1988) does not apply in an action for damages against a manufacturer of allegedly defective construction materials.

We must also reject the petitioners' contention that, prior to legislative enactment of § 55–2–6a (1988), there was no statute of limitations applicable to actions against the manufacturer of allegedly defective construction materials. As we will discuss more fully below, the home or building owner damaged by allegedly defective construction materials may pursue the various contract remedies provided by the Uniform Commercial Code.

## II.

We now turn to the issue of whether this case sounds in tort, as is basically alleged by the petitioners in certified questions three through five.

This Court has consistently recognized the fundamental differences between tort and contract or warranty causes of action. In *Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 297 S.E.2d 854 (1982), we stated:

Tort law traditionally has been concerned with compensating for physical injury to person or property. Contract law has been concerned with the promises parties place upon themselves by mutual obligation. Physical harm to the defective product belongs with tort principles; reduction in value merely because of the product flaw falls into contract law.

*Id.* 171 W.Va. at 84, 297 S.E.2d at 859 (citations omitted).

The purpose behind the doctrine of strict tort liability "is to insure that the costs of injuries resulting from defective products are borne by the manufacturer that put such products on the market rather than by the injured persons who are powerless to

protect themselves." *Id.* 171 W.Va. at 82, 297 S.E.2d at 856 (quoting *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901 (1963)). Following our adoption of strict liability in products liability cases in *Morningstar v. Black and Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979), we held in *Star Furniture* that strict liability may be used to recover property damages even when the defective product causes property damage without also causing personal injury. However, we refused to extend strict liability in tort to cases involving economic loss such as a decline in the intrinsic value of a product or lost profits, although we recognized that some jurisdictions had done so. The Court stated that:

> ... [w]e reject the line of cases begun by *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1964), which have permitted use of strict liability to recover the difference between the value of the product received and its purchase price in the absence of a sudden calamitous event. [citations omitted.] In West Virginia, property damage to defective products which results from a sudden calamitous event is recoverable under a strict liability cause of action. Damages which result merely because of a 'bad bargain' are outside the scope of strict liability.

171 W.Va. at 84, 297 S.E.2d at 859. Thus, we concluded that a consumer can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Id.* 171 W.Va. at 82, 297 S.E.2d at 859 (quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 18, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (1965)).[4]

A case presenting allegations somewhat similar to those now before us is *Roxalana Hills, Ltd. v. Masonite Corp.*, 627 F.Supp. 1194 (S.D.W.Va.1986), in which a contractor sued the suppliers and manufacturers of allegedly defective siding used in the construction of an apartment complex. The plaintiffs attempted to recover damages under a tort negligence theory, complaining of rotting, decay, degeneration of appearance and "inconvenience to the tenants." *Id.* at 1198. In an opinion by Chief Judge Haden, the United States District Court for the Southern District of West Virginia stated:

> The character of losses charged are decay and rotting—the type *Star Furniture* explicitly held to be economic and, therefore, the subjects of a bad bargain.... Because Roxalana complains of a bad bargain, of economic loss, it cannot make a strict liability in tort claim out of this commercial case.

*Id.*

■ It is clear from these cases that while a strict liability tort claim may arise when a defective product causes injury, a party who suffers mere economic loss as a result of a defective product must turn to the Uniform Commercial Code to seek relief.[5]

---

4. A case in which the damages complained of are remarkably similar to those now before us is *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982). In *Redarowicz,* the Illinois Supreme Court held that the second owner of a home could not recover economic losses from the builder under a negligence theory. The Court stated that:

> [t]his is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture. The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for. The complained-of economic losses are not recoverable under a negligence theory.

*Id.* 65 Ill.Dec. at 414, 441 N.E.2d at 327. *See also Beckmire v. Ristokrat Clay Products Co.*, 36 Ill.App.3d 411, 343 N.E.2d 530 (1976) (suit for allegedly defective brick in residence barred by limitations period accruing at date of sale); *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280 (3d Cir.1980) (costs for repair and replacement of defective roof recoverable in contract only).

5. *See generally* Wright and Nicholas, *The Collision of Tort and Contract in the Construction Industry*, 21 U.Rich.L.Rev. 457 (1987), in which the authors examine the origins and purposes of both tort and contract law, initially discussing the prevalent standard of liability in the con-

■ West Virginia Code § 46–2–725(1) provides, in part, that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Section 46–2–725(2) then states:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In the case now before us, the petitioners did not file suit against the respondent brick manufacturer within the four-year period after tender of delivery of the bricks as required by the Uniform Commercial Code, nor did they receive an explicit warranty of future performance from the brick manufacturer. Therefore, we need not address the breach of warranty "discovery rule" contained in W.Va.Code § 46–2–725(2), which requires that the consumer receive a warranty which "explicitly extends to future performance" in order to toll the statute of limitations at such time as "the breach is or should have been discovered." *See generally* W. Hawkland, 3 Uniform Commercial Code § 2–725.02 (1984).

The discovery rule is an exception to a statute of limitations which delays the running of the statute until such time as the plaintiff knew, or reasonably should have known, of the injury and its cause. Citing our holding in *Hickman v. Grover*, 178 W.Va. 249, 358 S.E.2d 810 (1987), the peti-

tioners ask that we now extend the discovery rule, which we applied to products liability tort actions in *Hickman*, to the type of case they present here. This we decline to do in the face of the express language of W.Va.Code § 46–2–725(2).

The petitioners admit that this action, "to a certain extent, does seem as though it sounds in contract." However, by asserting that the respondent manufacturer was negligent and committed willful, wanton, and reckless acts associated with the defective product, and by asking for damages for fraud as well as punitive damages, they state that this is "in reality" a tort action. We are not persuaded by the petitioners' argument on this point.

Our decisions in *Star Furniture* and *Hickman*, as well as the district court's opinion in *Roxalana Hills*, all clearly indicate that strict liability in tort is available in cases involving physical injury as well as when there is damage to the defective product itself or to other property if such damage is the result of a "sudden calamitous event." However, where the only loss suffered is an economic loss, as in the case of losses which are associated with a "bad bargain," the injured party must pursue the remedies provided in the Uniform Commercial Code, subject to the statute of limitations contained therein. We will not circumvent the Uniform Commercial Code's remedial scheme by applying the discovery rule to a contract action in a manner not prescribed by the Code.[6]

### III.

■ The final issue before us involves the petitioners' claim that the respondent sold defective brick knowing that the de-

---

struction industry and "the troubling development of the rule that purely economic losses may be recovered in negligence." *Id.* at 458. However, the authors argue that "tort law is not designed to provide relief to those who have suffered purely economic losses." *Id.* at 467. After analyzing several key decisions which they believe signal an end to this trend, they conclude that "[c]ourts are beginning to give greater emphasis to the basic social policies underlying commercial transactions and less to expanding the domain of tort law." *Id.* at 487.

**6.** *See generally,* Note, *Strict Liability and Warranty in Consumer Protection: The Broader Protection of the UCC in Cases Involving Economic Loss, Used Goods, and Nondangerous Defective Goods,* 39 Wash. & Lee L.Rev. 1347 (1982), in which the author discusses the "doctrinal confusion" surrounding strict liability and concludes that "warranties ... challenge strict liability as the consumer's best means of recovering damages from sellers of defective goods." *Id.* at 1369.

fects would not be discovered until after the statute of limitations had expired. The respondent contends that this is no more than an assertion of a breach of implied warranty claim, and argue that bare allegations of fraud do not satisfy the burden imposed by both the Federal and West Virginia Rules of Civil Procedure, under which Rule 9(b) requires that the circumstances constituting fraud shall be stated with particularity. Because the petitioners do no more than express their opinion that the respondent fraudulently sold them defective brick, we cannot find that they have stated a cause of action sufficient to avoid the four-year limitations period set out in W.Va.Code § 46–2–725.[7]

Having answered the certified questions, we dismiss this case from the docket of this Court.

Certified questions answered.

---

7. The petitioners also seem to be asserting a claim of fraudulent concealment in Certified Question No. 3(a). Although the discovery rule may be applied under circumstances in which a fraudulent concealment claim is properly before a court, we will not address the issue here, where the petitioners have concluded that the respondents engaged in fraudulent activity without including in their pleadings any facts upon which the conclusion is based.