423 S.E.2d 644

**Cecil W. CART, Appellant,**

v.

**Ked MARCUM, Avery Hager and David Scott Jefferson, Defendants Below,**

**Ked Marcum and Avery Hager, Appellees.**

**No. 21172.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Nov. 12, 1992.

J. William St. Clair, Huntington, for appellant.

David C. Ray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for appellee Ked Marcum.

R.R. Fredeking, II, Fredeking & Fredeking, Huntington, for appellee Avery Hager.

NEELY, Justice:

In this case we are asked to determine what circumstances toll the statute of limitations in a tort case because of lack of knowledge of the wrong by the plaintiff. Mr. Cart, the plaintiff below, filed his suit more than two years after an alleged conversion of his timber took place, but contends that the suit was filed within two years of the time he discovered the tort and who had committed it. Although we agree that under certain circumstances the statute of limitations may be tolled until dis-

covery, the general rule is that the statute of limitations begins to run when the injury occurs. Accordingly, we affirm.

## I.

In June of 1988, Mr. Cart entered into an oral contract with David Scott Jefferson to allow Mr. Jefferson to enter Mr. Cart's land to cut, remove, and sell timber from 65 acres. Mr. Cart and Mr. Jefferson agreed to split the proceeds of the sale evenly, with Mr. Jefferson bearing all expenses and replanting costs. Mr. Jefferson produced a written contract and gave it to Mr. Cart, but the contract was never signed.

█ Mr. Cart was concerned about Mr. Jefferson's repeated stalling tactics to avoid signing their agreement.[1] Mr. Cart fenced off his property and warned Mr. Jefferson not to come onto the property until the contract was signed. Mr. Jefferson apparently did not want to sign the contract; instead, he took all of the timber that he had cut and sold it to saw mills in order to have the wood processed.[2] Mr. Jefferson subsequently absconded with the proceeds from the sale of that timber. Mr. Jefferson has yet to be located. It is clear

that the alleged conversion took place *no later than* 9 August 1988.[3]

Mr. Cart visited his property on 14 August 1988 and noticed for the first time that the cut timber had been removed from the property. He tried to contact Mr. Jefferson after the timber disappeared, but was not able to locate him. In the Fall of 1989, Mr. Cart's investigation combined with the investigations of the state police and the F.B.I. traced the path of at least some of the timber through Mr. Hager and Mr. Marcum.

Mr. Cart did not file his action until 10 August 1990, which is more than two years after the accrual of the cause of action. The statute of limitations for this type of tort is two years.[4] The Circuit Court of Cabell County dismissed the case against defendants Marcum and Hager on summary judgment because the action was time-barred by the statute of limitations.

## II.

█ "The statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues which is when the injury is inflicted." Syl. pt. 1,

---

1. Mr. Cart stated his reasons for his disagreement with Mr. Jefferson in his deposition:

   He had put me off for six weeks to get to the attorney's office, and he called me on August the 8th approximately 8:00 in the morning and asked me why I put the fence up, and I told him it was to keep him off the property. And I asked him why, and I said, 'You've put me off for six weeks now getting down to the attorney's office to get this contract ratified or whatever, signed and notarized, and until you do, I don't want you back on my property.'

   Cart deposition, 20 December 1990, at 26.

2. Defendants Avery Hager and Ked Marcum are involved in this matter because Mr. Jefferson sold the timber to Mr. Hager, and Mr. Marcum was hired to help haul the timber off Mr. Cart's land and cut it into marketable pieces. Avery Hager and Ked Marcum both work in the logging business as their primary trade. Mr. Hager is a logger who buys raw timber, assists in the cutting of that timber, has the wood processed, and then re-sells the boards. Mr. Marcum runs a small sawmill in Glenwood, and worked with Mr. Hager many times in the past to help Mr. Hager haul the cut timber and then process the timber into boards.

   For the Cart timber, Mr. Hager hired Mr. Marcum to haul and process the wood, and Mr. Marcum received the low-grade logs from the land for his services. The low-grade logs were valued at $331.84 before he cut them into boards, and $995.54 after he cut them. Mr. Hager paid $2,700 to Mr. Jefferson for the rest of the timber and presumably resold the boards in the ordinary course of his business.

3. "The cause of action arose on August 8th or 9th, 1988 at the very latest." 18 November 1991 Opinion and Order of the Circuit Court of Cabell County (Record at 99). Defendants Marcum and Hager contend that their participation in the alleged conversion took place sometime near the end of July 1988, not in August as Mr. Cart alleges. In evaluating a summary judgment dismissal, we assume the facts in a light most favorable to the party against whom summary judgment is being sought (i.e., Mr. Cart). The most favorable view of the facts possible places the conversion happening no later than 9 August 1988.

4. *W.Va.Code,* 55–2–12(a) [1959].

*Jones v. Trustees of Bethany College*, 177 W.Va. 168, 351 S.E.2d 183 (1986). However, "[j]ustice is not done when an injured person loses his right to sue before he discovers if he was injured or who to sue." *Hickman v. Grover*, 178 W.Va. 249, 252, 358 S.E.2d 810, 813 (1987). In an attempt to mitigate the harshness of the statute of limitations, the "discovery rule" has been created by courts across the nation, including this Court. Under the "discovery rule," the statute of limitations is tolled until the plaintiff knows or by reasonable diligence should know that he has been injured and who is responsible.

Early on,[5] the "discovery rule" was invoked primarily in medical malpractice actions, because often the results of such malpractice would be apparent only years later:[6]

> In [malpractice actions] we have recognized that often the plaintiff is not aware of the fact that an injury has been inflicted. In the area of medical malpractice, this is particularly true because the physician's negligence may consist of some improper diagnosis or improper surgery when the plaintiff is unconscious so that he is not aware that there has been an injury.

*Jones v. Trustees of Bethany College*, 177 W.Va. 168, 169, 351 S.E.2d 183, 184 (1986).

Despite this tendency to give unaware plaintiffs a break, the plaintiffs still had to show that they had good reason to be unaware of their injury:

> 'In a medical malpractice case the statute of limitations begins to run at the time the injury is inflicted, or ... when ... the injury is discovered or *when by the exercise of reasonable diligence it should have been discovered.'* Syllabus Point 2, in part, *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967). [Emphasis added]

Syl. pt. 2, *Bethany College*, 177 W.Va. 168, 351 S.E.2d 183. For example, if a surgeon leaves a surgical sponge inside of a patient and the patient discovers it five years later and immediately brings suit, that would fit under the discovery rule. However, if the same patient (with health insurance) bore noticeable stomach pains for two more years before having a doctor examine him, then he did not act with reasonable diligence and the "discovery rule" would not protect the patient.

From medical malpractice, the "discovery rule" was expanded to legal malpractice:

> Although, as asserted by the defendant, the Morgan decision [*Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 144 S.E.2d 156 (1965)] applying the "discovery rule" was restricted to cases involving foreign objects negligently left in a patient's body, *we discern no valid reason why the principle expressed therein should not be extended when such extension is designed to promote justice and right.* Morgan extended the rule to escape one which was "unrealistic and cruelly harsh." For the same reason we extend the *Morgan* rule to cover the instant case. [Emphasis added]

*Family Savings and Loan, Inc. v. Ciccarello*, 157 W.Va. 983, 991, 207 S.E.2d 157, 163 (1974).

of the injury, unless a plaintiff could show that the defendant actively committed fraud in an attempt to prevent the plaintiff from prosecuting his claim. *See Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967).

In *Harrison v. Seltzer*, we described this shift of focus from the "fraudulent" activities of the defendant to the plaintiff's lack of "awareness":

> In malpractice, our discovery rule does not initially rest on a showing of fraudulent concealment, but rather on whether the injured plaintiff was aware of the malpractice or, by the exercise of reasonable care, should have discovered it.

Syl. Pt. 2, *Harrison v. Seltzer*, 165 W.Va. 366, 268 S.E.2d 312 (1980).

---

**5.** It is interesting to note that in West Virginia, the discovery rule actually has its origins in subterranean coal mining operations, where people would mine underneath the property of others and extract the coal. Years later, the owner of the mineral rights would discover that the coal had been extracted. This Court created a "discovery rule" to protect owners of mineral rights. *See Petrelli v. West Virginia–Pittsburgh Coal Co.*, 86 W.Va. 607, 104 S.E. 103 (1920); *Knight v. Chesapeake Coal Co.*, 99 W.Va. 261, 128 S.E. 318 (1925).

**6.** The "discovery rule" itself evolved from the concept of fraudulent concealment. Under the fraudulent concealment concept, the statute of limitations would ordinarily run from the time

Indeed, that reasoning has allowed plaintiffs, a tort at a time, to attempt to extend the torts included under the "discovery rule," such as products liability,[7] faulty construction [8], and invasion of privacy.[9] Unless a clear statute foreclosed expanding the scope of the discovery rule,[10] we have expanded it each time. Such a piecemeal method has enabled a victim of nearly any tort who misses the statute of limitations to argue that his tort is analogous to the torts to which the "discovery rule" applies; however, each expansion has occurred as the expense of the predictability that bright line rules like a strict statute of repose create and also at the expense of reviving litigation that should be long dead.

■■■ "The tendency of the law must always be to narrow the field of uncertainty." O.W. Holmes, *The Common Law* 127 (1881). Therefore, we hold today that the "discovery rule" is generally applicable to all torts, unless there is a clear statutory prohibition of its application.[11] However, by declaring the *existence* of a "discovery rule" we do not eviscerate the statute of limitations: the statute of limitations will apply unless the handicaps to discovery at the time of the injury are great and are largely the product of the *defendant's* conduct in concealing either the tort or the wrongdoer's identity.

■■■ The "discovery rule," then, is to be applied with great circumspection on a case-by-case basis only where there is a strong showing by the plaintiff that he was *prevented* from knowing of the claim at the time of the injury. The general rule is that mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of a statute of limitations.[12] In order to benefit from the rule, a plaintiff must make a strong showing of fraudulent concealment,[13] inability to comprehend the injury,[14] or other extreme hardship:

.... However, special rules apply in a case involving particular hardship or other circumstances justifying different accrual rules. [Emphasis added]

In the interest of justice and fundamental fairness, we adopt the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered whichever occurs first.

*Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 560, 335 N.W.2d 578, 583 (1983).

---

**7.** "In products liability cases, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence should know, (1) that he has been injured, (2) the identity of the maker of the product, and (3) that the product has a causal relation to the injury." Syl. pt. 1, *Hickman v. Grover,* 178 W.Va. 249, 358 S.E.2d 810 (1987).

**8.** *Basham v. General Shale,* 180 W.Va. 526, 377 S.E.2d 830 (1988); *Shirkey v. Mackey,* 184 W.Va. 157, 399 S.E.2d 868 (1990).

**9.** *Slack v. Kanawha County Housing and Redevelopment Authority,* 188 W.Va. 144, 423 S.E.2d 547 (1992).

**10.** In the faulty construction area, *W.Va.Code* 55-2-6a [1983] (known as the "architects and builders" statute) provides a ten-year maximum period within which suits can be brought against anyone who participates in the construction of a building. This statutory provision explicitly states that it shall not be tolled except by the bringing of an action within the ten-year period. We have held that this explicit provision prohibits the application of the "discovery rule." *See Basham v. General Shale,* 180 W.Va. 526, 377 S.E.2d 830 (1988); *Shirkey v. Mackey,* 184 W.Va. 157, 399 S.E.2d 868 (1990).

**11.** We note that we are not the first state supreme court to find a generally applicable "discovery rule":

**12.** This is the rule nationally, as well as in West Virginia. *See, e.g., Snow v. A.H. Robins Co., Inc.,* 165 Cal.App.3d 120, 211 Cal.Rptr. 271 (1985).

**13.** Fraudulent concealment would include concealment of the injury itself or the identity of the tortfeasor.

**14.** Examples of lack of comprehension of injury would include a piece of surgical equipment left in a patient that is not discovered until several years later, exposure to hazardous chemicals (such as asbestos or Agent Orange) the effects of which were only detected twenty years later.

In the products liability area, lack of comprehension of injury includes (1) that the plaintiff has been injured, (2) the identity of the maker of the product, and (3) that the product has a causal relation to the injury. Syl. pt. 1, *Hickman v. Grover,* 178 W.Va. 249, 358 S.E.2d 810 (1987).

54 C.J.S. *Limitations of Actions* § 87(a) (1987).

■ Applying the "discovery rule" in this case, we do not find that Mr. Cart has made the showing that he could not reasonably have discovered who took his wood. Indeed, Mr. Cart suspected Mr. Jefferson would take the wood in advance of the actual theft. Mr. Cart took significant precautions in order to prevent Mr. Jefferson from stealing the timber; however, these precautions were not successful. Sure enough, Mr. Cart's suspicions were correct and Mr. Jefferson took the timber despite the fact he had no permission to do so. Mr. Cart should have known that Mr. Jefferson took his wood and he should have known it at the time of the injury.

Mr. Cart suffered from none of the disabilities that a beneficiary of the "discovery rule" must show in order to free himself from the demands of the statute of limitations.[15] Mr. Cart was not robbed by a stranger whose identity was discovered only many years later; Mr. Cart did not have a piece of surgical equipment left in his body that was discovered only several years later; Mr. Cart was not exposed to a chemical, the effects of which were discovered only years later; and Mr. Cart was not struck by a hit-and-run automobile whose driver was determined only years later. No, Mr. Jefferson, a person with whom Mr. Cart was doing business, took something that Mr. Cart thought Mr. Jefferson was likely to take. Mr. Cart knew what was likely to be taken and who did the taking. A reasonably diligent investigation would have turned up the identities of Mr. Marcum and Mr. Hager sooner; indeed, Mr. Cart still had nearly a year after he discovered the identities of Mr. Marcum and Mr. Hager to bring suit, yet he failed to do so. No hardship prevented Mr. Cart from discovering his injury or the identities of Mr. Marcum or Mr. Hager. Therefore, we have find no reason in low or equity to toll the running of the statute of limitations under the "discovery rule."

### III.

For the reasons set forth above, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

---

**15.** Note that we are deciding today only the applicability of the "discovery rule" and the statute of limitations with respect to claims against Mr. Marcum and Mr. Hager, not as against Mr. Jefferson. Unlike Mr. Marcum and Mr. Hager who took no steps to conceal their actions, Mr. Jefferson has gone into hiding and made it difficult for Mr. Cart to pursue his claims against Mr. Jefferson. Therefore, it is quite possible that a suit against Mr. Jefferson would be successful.