67 F.3d 296
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paula L. SAYRE, Plaintiff-Appellant,
v.
GENERAL NUTRITION CORPORATION, a Delaware corporation;
Nature Made Nutritional Products, Incorporated, a
corporation; Rite Aid of West Virginia, Incorporated, a
West Virginia corporation; Naturally Vitamin Supplements, a
corporation; Defendants-Appellees,
Revco Discount Drug Centers, Incorporated, a Michigan
corporation, Defendant & Third Party Plaintiff-Appellee,
Showa Denko of America, Incorporated, a New York
corporation, Third Party Defendant-Appellee,
and
Showa Denko, KK, a Japanese corporation, Third Party Defendant.
 No. 94-2593.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 5, 1995.
Decided Sept. 29, 1995.
 
 ARGUED: James Anthony McKowen, HUNT, LEES, FARRELL & KESSLER, Charleston, West Virginia, for Appellant. Julie Ann Waddell, CLEARY, GOTTLIEB, STEEN & HAMILTON, Washington, D.C., for Appellees. ON BRIEF: Matthew D. Slater, CLEARY, GOTTLIEB, STEEN & HAMILTON, Washington, D.C.; P. Michael Pleska, Fazal A. Shere, BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Appellees.
 Before NIEMEYER and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Paula L. Sayre filed this product liability action in May 1992 against the appellees, producers and distributors of the drug L-tryptophan, for allegedly causing her to suffer Eosinophilia Myalgia Syndrome ("EMS"). EMS, a deadly illness that causes a high white blood cell count, muscle and joint pain, and rashes, has been linked to L-tryptophan by the Centers for Disease Control and the Food and Drug Administration ("FDA"). The district court, acting under diversity jurisdiction, dismissed the case as untimely under West Virginia's two-year statute of limitations. The court held that Sayre has been on inquiry notice of her cause of action since November 1989, when she viewed an NBC News report connecting L-tryptophan to medical symptoms similar to hers. Because we agree that this was sufficient notice under West Virginia's discovery rule, we affirm the district court's ruling.
 
 
 2
 In 1983, Sayre began taking L-tryptophan, which used to be common in many dietary supplements, to help her sleep. After moving to Ohio in 1985, Sayre began purchasing L-tryptophan products from a General Nutrition Center ("GNC") store in Vienna, West Virginia, and other retail stores in the area.
 
 
 3
 Before November 1989, Sayre had been experiencing significant health problems, including choking, a burning sensation in her spine, and extreme pain in her hips. On November 13, 1989, Sayre watched an NBC News television report covering a federal investigation into the outbreak of a new illness (later called EMS) that was linked to L-tryptophan. The report stated that federal health officials had warned that the "risks of taking L-tryptophan far outweigh any benefits" and were "urging that stores stop selling it, and ... if people have any at home they stop using it."*
 
 
 4
 Suspecting that her health problems might be linked to L-tryptophan, Sayre wrote a letter to her rheumatologist, Dr. John C. Huntwork, the day after she saw the NBC News report. Among other things, Sayre asked whether she could be experiencing side effects from the L-tryptophan she was taking. She wrote:
 
 
 5
 I have been miserably trying to function. I went to church and couldn't even sit through message and got up to leave and preacher asked if I was mad. I burst out a crying and said I was in pain so they prayed for me. I have been taking L-Tryptophan 500 mg. to help me sleep, but heard on television last night it causes some disease [a]ffecting the muscles. Do you know anything about this?
 
 
 6
 Dr. Huntwork received the letter, but there is no evidence that either Sayre or Dr. Huntwork ever followed up on Sayre's inquiry. Instead of pursuing her concerns about L-tryptophan, Sayre continued to take the drug until her supply was exhausted. After November 1989, Sayre was unable to purchase L-tryptophan because, as she then understood, there were problems with the product. Sayre also learned that retailers had stopped selling L-tryptophan because the FDA had removed it from the market.
 
 
 7
 In May 1990, Sayre read a magazine article that provided more accounts of the problems L-tryptophan was causing. And again she followed up by writing three other doctors, questioning them about the possibility of a causal link between her symptoms and L-tryptophan. Once again, for various reasons, Sayre did not receive a conclusive answer, although she claims that one of the doctors discouraged her inquiry by telling her that "she reads too much."
 
 
 8
 Finally, in April 1992, Sayre's condition was diagnosed as EMS, possibly caused by L-tryptophan. She filed this product liability action on May 15, 1992, naming as defendants several companies that marketed and sold L-tryptophan as a non-prescription dietary supplement.
 
 
 9
 The district court granted the defendants' motion for summary judgment, holding that Sayre's claim was time-barred under West Virginia's two-year statute of limitations for product liability actions. The court concluded that Sayre received inquiry notice of her product liability action in November 1989 when she saw the NBC News Program on L-tryptophan and thereafter wrote a letter associating her symptoms with the drug. On appeal, Sayre contends that she did not discover the connection between L-tryptophan and her symptoms until she was diagnosed with the disease in April 1992, or at the earliest in May 1990 when she read the magazine article. She says she dismissed the NBC News story as mere "propaganda."
 
 
 10
 Under West Virginia law, which applies in this diversity case, a "discovery rule" is generally applicable to tort causes of action. See Cart v. Marcum, 423 S.E.2d 644, 648 (W.Va.1992). Under the rule, "the statute of limitations is tolled until the plaintiff knows or by reasonable diligence should know that [she] has been injured and who is responsible." Id. at 647. Consistent with the discovery rule's purpose of protecting the plaintiff who is "prevented from knowing of [her] claim at the time of injury," id. at 648 (emphasis added), the Supreme Court of Appeals of West Virginia has stated:
 
 
 11
 The general rule is that mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of a statute of limitations. In order to benefit from the [discovery] rule, a plaintiff must make a strong showing of fraudulent concealment, inability to comprehend the injury, or other extreme hardship.
 
 
 12
 Id. (emphasis added).
 
 
 13
 In the case before us, Sayre was not prevented from discovering her product liability cause of action or the possible link between L-tryptophan and the symptoms she was experiencing. On the contrary, as early as November 13, 1989, the date of the NBC News report, Sayre suspected that her illness was linked to L-tryptophan because the report explicitly discussed the risks associated with the drug's use. We need not speculate about whether the NBC News report put Sayre on notice to investigate further because the record shows that in fact she did. She wrote her doctor to express her concern the day after she watched the report. She also acknowledges that she was aware at the time that the FDA had removed L-tryptophan from the market. In these circumstances, West Virginia law charges Sayre with a duty to investigate diligently and to secure an answer. When Dr. Huntwork failed to respond to her letter, Sayre did not follow up. Only Sayre's own lack of diligence is responsible for her failure to discover her cause of action in November 1989 or the two years that followed.
 
 
 14
 Accordingly, we affirm the judgment of the district court.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The warning in the NBC report about the dangers of L-tryptophan was quite explicit:
 Tom Brokaw, anchor: Tonight U.S. health officials are investigating reports that a widely used diet supplement may cause a deadly blood disease. It has struck people in at least nine states. The most serious outbreak, in New Mexico. NBC's science correspondent Robert Bazell.
 Robert Bazell reporting: In health food stores around the country today workers were either removing L-tryptophan from the shelves or posting warnings. Physicians believe they have discovered an outbreak of a serious new illness among people who have taken the commonly-used food supplement.
 * * *
 Joy Hunter has the illness. The symptoms include a high count of a certain type of white blood cell, severe muscle pain, cough ing, and rashes. There have been no confirmed deaths, but doctors say the illness could be life threatening. There have been 50 confirmed cases, but at state health departments across the country and at the Centers for Disease Control, reports of new cases were pouring in today. And officials believe there are hundreds and probably thousands.
 * * *
 Federal health officials say that until they figure out what is causing the illness, the risks of taking L-tryptophan far outweigh any benefits. They are urging that stores stop selling it, and that if people have any at home they stop using it. Robert Bazell, NBC News, New York.