518 S.E.2d 645

**Beulah B. WOOTON, Administratrix of the Estate of Robert O. Wooton, Plaintiff Below, Appellant,**

v.

**Darryl J. ROBERTS and Legacy One, Inc. (fka Associated Cemetery Estates, Inc.), Defendants Below, Appellees.**

No. 25834.

Supreme Court of Appeals of West Virginia.

Submitted June 8, 1999.

Decided July 9, 1999.

Joshua I. Barrett, Esq., Sean P. McGinley, Esq., Debra L. Hamilton, Esq., DiTrapano,

Barrett & DiPiero, Charleston, West Virginia, Attorneys for Wooton.

David Allen Barnette, Esq., Christina L. Townsend, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for Roberts.

John J. Nesius, Esq., Robin C. Hewitt, Esq., Jamie S. Alley, Esq., Spillman, Thomas & Battle, Charleston, West Virginia, Attorneys for Legacy One, Inc.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Raleigh County entered on April 17, 1998. In that order, the circuit court directed verdicts in favor of the appellees and defendants below, Darryl J. Roberts and Legacy One, Inc., in an action filed by the plaintiff, Beulah Wooton, administratrix of the Estate of Robert Wooton, alleging breach of fiduciary duty and constructive fraud with regard to corporate stock owned by her deceased husband. The circuit court found that the action, which was filed more than twenty years after the stock was allegedly transferred from the decedent's estate, was barred by the statute of limitations. In this appeal, the plaintiff contends that the circuit court erred by directing verdicts in favor of the appellees because she was entitled to the benefit of the "discovery rule."

This Court has before it the petition for appeal, the entire record, and briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is reversed and this case is remanded for further proceedings.

I.

Robert O. Wooton began working for Associated Cemetery Estates, Inc. (hereinafter "ACE" or "Legacy One"[1]) in 1956. At that time, ACE, a cemetery and funeral home business, was owned by Chester and Marzetta Roberts. In 1959, ACE offered seven of its "key" employees the opportunity to purchase 400 shares of ACE stock. Robert Wooton was one of the employees to whom stock ownership was offered.

On January 4, 1960, stock was transferred to the ACE employees by a Stock Agreement. Pursuant to the agreement, each employee signed a promissory note to pay for his or her shares of stock. According to the plaintiff, she and her husband understood that the stock would be paid for by future dividends and directors' fees.

The promissory note signed by Robert Wooton stated that he "promise[d] to pay to the order of Chester G. Roberts ... Eight Thousand Dollars ($8,000.00) in Ten (10) equal installments." The obligation bore an annual interest rate of 4% and the share certificates were deposited as collateral security for the payment of the note. Thus, neither Robert Wooton nor any of the other ACE employees had physical possession of the stock certificates.

On March 8, 1969, Robert Wooton died. More than two years later, the plaintiff received a letter dated October 8, 1971, from Chester Roberts informing her that her husband had been in default under the terms of the promissory note at the time of his death because he had failed to make the scheduled principle and interest payments. The letter further stated that "[i]n accordance with our conversation of October 7, 1971,[2] I am enclosing a check in the amount of $4,000.00 to purchase Bob's estate equity in Certificates No. 7 and 18." After receiving this letter, the plaintiff informed Chester Roberts that his offer was inadequate. She neither cashed, nor returned the check.

On March 24, 1972, Chester Roberts sent a letter to ACE's secretary, Mary Frances Roop, informing her that he had purchased Robert Wooton's stock at a private sale. He requested that she issue a new stock certificate to him in the amount of 400 shares. The next day, Mary Roop issued a new certificate for 400 shares of ACE stock to Chester Roberts and canceled the certificates issued to Robert Wooton. Thereafter, Chester Roberts gave the stock he repurchased from Robert Wooton to his son, Darryl Roberts, as a Christmas present in 1976.

---

1. Legacy One is the successor corporation to ACE.

2. The plaintiff has no recollection of any such conversation.

Chester Roberts died in 1980, and Darryl Roberts became the president and chief executive officer of ACE. In January 1985, Darryl Roberts approached Bill Wooton, one of Robert Wooton's sons, to discuss the status of his father's stock. At that time, Darryl Roberts stated that Robert Wooton had failed to make the required principal and interest payments on the note. He renewed his father's previous offer to buy the stock for $4000.00 plus an additional 5% interest per year since the initial offer was made.

Bill Wooton forwarded this information to his brother, James Wooton, who was living in Baltimore, Maryland, with a letter stating, "I believe they discontinued dividends at his death, even though daddy or his estate still owned the stock." James Wooton responded to Darryl Robert's offer with a counterproposal on February 7, 1985. Darryl Roberts rejected the counteroffer and simply reinstated his previous offer.

On June 3, 1986, Bill Wooton, who had acquired 9.25 shares of Legacy One stock in exchange for legal services previously rendered to an affiliate of ACE [3], executed a Legacy One Shareholders Agreement.[4] The agreement listed the names of all Legacy One shareholders as of May 28, 1986. Bill Wooton's name appeared on the document as owning 9.25 shares. However, neither Robert Wooton nor his estate's name appeared on the list as a shareholder. Bill Wooton later claimed that he executed the agreement without reading the document and without knowledge that his father was not included as a shareholder.

In the 1990s, various offers to settle the matter were made between Legacy One and James Wooton. On July 18, 1994, Legacy One made a final offer to settle the matter for $12,000.00. That offer was rejected.

On November 9, 1994, the plaintiff was named as Administratrix of Robert Wooton's Estate. She filed a complaint against Darryl Roberts and Legacy One on November 28, 1994, claiming, *inter alia*, breach of fiduciary duty and constructive fraud relating to her husband's stock. During the course of litigation, several summary judgment motions were filed by the appellees asserting that the plaintiff's claims were barred by the statute of limitations. These motions were denied.

The case proceeded to trial before a jury on March 24–26, 1998. At the close of the plaintiff's presentation of evidence, the appellees moved for directed verdicts pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure. They claimed that the plaintiff knew or should have been on notice by at least February 1985, that her husband's stock had been transferred. They further asserted that if the plaintiff had made a reasonable inquiry, she would have learned that the stock had been repurchased by Chester Roberts. Thus, the appellees maintained that the plaintiff failed to show that she was entitled to the benefit of the discovery rule, and therefore, her claims were barred by the statute of limitations.

The trial court accepted the arguments of the appellees, finding that the plaintiff had sufficient information by 1972 to know that something had happened to cause her not to have the enjoyment of possession of the stock. In addition, the trial court found that by 1985, the plaintiff's sons had the same knowledge. The trial court further found that the plaintiff had not offered sufficient evidence to create an issue of fact as to whether either of the appellees did something to prevent her from knowing or finding out what happened to her husband's stock. Thus, the court concluded that the discovery rule was not applicable and that there were no other issues of fact. Accordingly, the motions for directed verdicts were granted in favor of both appellees on all counts based on the statute of limitations. A final order reflecting the trial court's ruling was entered on April 17, 1998. This appeal followed.

## II.

The plaintiff contends that the circuit court erred by directing verdicts for the appellees

---

**3.** Bill Wooton is an attorney.

**4.** In 1986, the assets and liabilities of ACE and a number of affiliates were transferred to Legacy One and the shareholders of ACE and the affiliates were issued stock in Legacy One.

based on the statute of limitations. She maintains that the discovery rule applies and that she did not have notice of the stock transfer until 1994. In support of her assertions, the plaintiff has presented letters showing that the appellees made offers to purchase her husband's stock through the early 1990s. She contends that the appellees did not claim ownership of the stock until 1994.

■■■ The parties basically agree that a two-year statute of limitations applies in this case.[5] "Generally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syllabus Point 1, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). Syllabus Point 2, *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). "The 'discovery rule' is generally applicable to all torts, unless thère is a clear statutory prohibition of its application." Syllabus Point 2, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). Syllabus Point 3, *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). However, we have recognized that there are some instances where the discovery rule should not be applied because the nature of the injury or wrong is such that a plaintiff could not reasonably claim ignorance of the existence of a cause of action. In that regard, we have held that:

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.

Syllabus Point 3, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992).

Relying upon our holding in Syllabus Point 3 of *Cart, supra,* the appellees assert that the plaintiff knew or should have been on notice by at least February 1985 that her husband's stock had been transferred. They assert that a reasonable inquiry by the plaintiff would have revealed this fact. Moreover, they contend that the plaintiff has failed to show that any actions on their part kept her from discovering that the stock had been transferred.

■■■ In Syllabus Point 3 of *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990), we held that:

> Where a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury.

In *Stemple,* the plaintiffs brought an action for breach of contract and fraudulent concealment of termite damage against the former owners of their home. The circuit court granted summary judgment in favor of the defendants based on the statute of limitations. On appeal, this Court reversed the decision of the circuit court finding the issue of when the claim accrued for purposes of the statute of limitations was a question of fact for the jury.

■■■ In this case, the circuit court granted the appellees' motions pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure which provides:

> (a) *Judgment as a matter of law.*—(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

In Syllabus Points 2 and 3 of *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996), this Court held that:

---

5.  Darryl Roberts concedes that a five year statute of limitations may apply to the plaintiff's claim of unjust enrichment and request for specific performance.

" ' "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85[, 163 S.E. 767 (1932) ]." ' Point 1, Syllabus, *Jenkins v. Chatterton,* 143 W.Va. 250[, 100 S.E.2d 808] (1957)." Syl. Pt. 1, *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978).

The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

Thus, in the case *sub judice,* we must determine whether the evidence presented by the plaintiff was sufficient to create a question of fact for the jury as to whether she was entitled to the benefit of the discovery rule. In other words, did the plaintiff offer evidence from which a reasonable jury could conclude that she did not know or had no reason to know that her husband's stock had been transferred prior to 1994.

After reviewing the record, we conclude that the plaintiff did offer sufficient evidence during the presentation of her case to create a question of fact for the jury regarding whether her claim was barred by the statute of limitations. We disagree with the circuit court's conclusion that because the plaintiff did not receive dividends after her husband's death, she had reason to know that something had happened to the stock. The plaintiff presented evidence indicating that she believed the stock was being paid for with the dividends and did not expect to collect them. More importantly, the plaintiff presented evidence that she received offers from the appellees to purchase her husband's stock through the 1990s. The plaintiff maintains that those offers gave her reason to believe that she still owned the stock. She contends that once the appellees claimed ownership of the stock in 1994, she timely filed suit. Considering these facts in the light most favorable to the plaintiff, we believe that the jury should have been given the opportunity to consider this evidence and determine whether the plaintiff's claims are barred by the statute of limitations.

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Raleigh County is reversed and this case is remanded to the circuit court for trial. The jury should resolve the issue of whether the plaintiff's claims are barred by the statute of limitations as well as the plaintiff's allegations of breach of fiduciary duty, constructive fraud, and unjust enrichment.

Reversed and remanded.