Record No. 890670

April 20, 1990

Present: All the Justices

*Philip J. Walsh (Charles J. O'Hara; Bromley, Brown & Walsh,* on brief), for appellants.

*Dennis J. Weipert* for appellees.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

The dispositive question in this case is whether the purchasers of a home are third-party beneficiaries under certain "Insurance/Warranty Documents" entered into by their builder, a home warranty corporation, and a home warranty insurer. The question

arose in a breach of contract action brought on January 28, 1987, by John W. Cobert and Anne T. Cobert, the purchasers of a new dwelling in Herndon, Fairfax County. Named as defendants were B. W. Good Enterprises, Inc., the builder of the dwelling,[1] Home Owners Warranty Corporation (HOW CORP), and HOW Insurance Company (HOW INSURANCE).[2]

The record shows that on February 15, 1984, Good Enterprises and the Coberts entered into an agreement for the sale and purchase of the dwelling in question. The Coberts took title to the property on July 2, 1984. On that date, as part of the purchase, the dwelling was enrolled in the Home Owners Warranty Program, in which Good Enterprises was a participant. This program has been described as follows:

> The Home Owner's Warranty Corporation administers the HOW program throughout the United States. That program has two major components—the Home Warranty and the Risk Retention Insurance policy. A home builder participating in the program issues to the initial purchaser of a home a two year "Home Warranty." For the first year following the sale, the builder warrants to the homeowner that the house will be free of defects due to non-compliance with the "Approved Standards" attached to the warranty. During the second year of occupancy, the warranty continues to cover defects in the plumbing, electrical, heating, and cooling systems due to non-compliance with the "Approved Standards." During this initial, two-year period, the builder also warrants that the house will be free from "Major Structural Defects. . . ."
>
> . . . .
>
> In the event a defect occurs in an item covered by the warranty, the builder is committed to repair, replace or pay the reasonable cost of repairing or replacing the defective item. This warranty terminates at the end of the second year.
>
> Under the HOW program, the builder purchases a "Risk Retention Insurance Policy" from HOW Insurance Company. In return for premium payments which vary depending

---

[1] Judgment by default was entered against B. W. Good Enterprises, Inc. on May 6, 1988. It has not participated in this appeal.

[2] Home Owners Warranty Corporation of Northern Virginia was also made a party defendant, but it was nonsuited by an order entered October 18, 1988.

on the length of time the builder has been in the Program and its claims record, the insurer agrees, in the language of the policy, to insure against loss resulting from: (1) Builder Default under the Home Warranty, and (2) "Major Structural Defects" of the home which first occur after expiration of the Home Warranty and before the termination of this Policy. First, if a "Builder Default" occurs under the two-year Home Warranty, the insurer will either "repair, replace or pay to the Purchaser on behalf of the Builder the reasonable cost of such repair or replacement." In addition, the policy protects the builder against liability for Major Structural Defects in the home that occur after two years but within ten years of the initial sale. If a Major Structural Defect occurs during this period, HOW Insurance will repair or replace the defect or will pay the homeowner the reasonable costs of the repair, whichever it chooses. The policy contains deductible and excess insurance clauses, and runs for ten years, regardless of any transfer of the ownership of the home. Claims under the policy are to be pursued by the homeowner with HOW Insurance, not the builder. Finally, if HOW Insurance incurs expense when a builder defaults on the Home Warranty, the insurer retains a right to be reimbursed by the builder.

*Home Warranty Corp.* v. *Elliott*, 572 F. Supp. 1059, 1063 (D. Del. 1983) (footnote and citation omitted).

HOW CORP formed HOW INSURANCE after the 1981 passage by Congress of the Product Liability Risk Retention Act, 15 U.S.C. § 3901 et seq. (the Act). This legislation was enacted in response to the difficulty certain types of businesses were encountering in obtaining product liability insurance. The Act provided for the creation of risk retention groups through which manufacturers of products, including homes, could self-insure their liability risks.

Under the Act, a risk retention group must be a "corporation or other limited liability association" and be "chartered or licensed as a liability insurance company under the laws of a State and authorized to engage in the business of insurance under the laws of such State." 15 U.S.C. § 3901 (a) (4) and (4) (C) (i). A group's "primary activity" must consist of "assuming, and spread-

ing all, or any portion, of the liability exposure of its group members." 15 U.S.C. § 3901 (a) (4) (A).

On July 27, 1981, HOW INSURANCE was incorporated in Delaware and chartered as an insurance company to engage in the business of insurance. On July 5, 1984, Good Enterprises and HOW CORP entered into a "Builder Agreement" under which HOW CORP agreed to arrange for HOW INSURANCE to extend insurance coverage to Good Enterprises and to issue evidence of such coverage to the home buyer.

At the time they took title to the property in question, the Coberts received from HOW CORP the "Insurance/Warranty Documents" that are the subject of this controversy. Included was a "Home Warranty and Major Structural Defect Insurance Policy" issued by HOW INSURANCE and a "Certificate of Insurance," comprising Section II of the policy, which stated that HOW INSURANCE "does hereby certify that the home described on the Declarations Page is insured against loss resulting from Builder Default and Major Structural Defects."

According to the allegations of their amended motion for judgment, the Coberts discovered, after taking title to the property in question, that their new home contained many "structural, fixture and other defects." Pursuant to the terms of the contract documents, they gave notice of the defects to the builder and made request for warranty performance by HOW CORP. The matter was referred for informal dispute settlement in accordance with the terms of the contract documents. Apparently dissatisfied with the results of the informal dispute procedure, the Coberts instituted the present action.[3]

HOW CORP and HOW INSURANCE moved for summary judgment on the grounds (1) that they had not made any express or implied warranties to the Coberts and, therefore, that the Coberts had not stated a cause of action upon which relief could be granted, and (2) that the Coberts were not third-party beneficiaries of the "Insurance/Warranty Documents" that comprise part of the HOW Program. The trial court granted the motion for summary judgment.

As noted at the outset, we think the dispositive question is whether the Coberts are third-party beneficiaries under the "In-

---

[3] HOW CORP and HOW INSURANCE do not question whether the Coberts' right to maintain the present breach of contract action is affected by the informal dispute settlement provisions of the contract documents.

surance/Warranty Documents" involved in this case. On this point, the trial court held that the Coberts were "at best incidental beneficiaries of [HOW CORP's] products liability coverage for the builder," and, hence, that they did not qualify as third-party beneficiaries.

HOW CORP and HOW INSURANCE follow the same theme in their appellate argument. They also suggest, however, that the extent of the coverage provided by the contract documents is controlled by the provisions of the Liability Risk Retention Act and that extension of coverage to third-party beneficiaries under state law is prohibited.

■ We reject this suggestion. We do not think that the Act has such prohibitive effect upon state law. Indeed, *Home Warranty Corp.* v. *Elliott, supra,* which was cited by HOW CORP and HOW INSURANCE, settles the point against them. There, the court stated:

> In order to facilitate the formation of risk retention groups, the [Product Liability Risk Retention Act] preempted state law to the extent necessary to provide federal authority for interstate operation and to eliminate duplicative state regulation. It did not, however, substitute a federal regulatory scheme.

572 F. Supp. at 1061. Continuing, the court said:

> After defining "product liability," the Act goes on to provide that this definition does not "affect either the tort law or the law governing the interpretation of insurance contracts of any State." 15 U.S.C. § 3901(b). In other words, while the Act defines product liability broadly so that all potential product liability risks can be insured, the Act does not change the tort or contract law of any state.

572 F. Supp. at 1062. And in *Home Warranty Corp.* v. *Caldwell,* 777 F.2d 1455, 1473 (11th Cir. 1985), *cert. denied,* 479 U.S. 892 (1986), quoting a congressional report, the court stated:

> "[S]tate law is preempted only to the extent necessary to carry out the purposes of the Act. Only state laws which prohibit[,] or state laws of a non-chartering state which attempt

to regulate, directly or indirectly, the formation and operation of approved risk retention groups . . . are preempted."

■■■ As demonstrated by this examination of legislative history and federal decisions, the contract law of this Commonwealth relating to third-party beneficiaries remains unchanged by the Act. The pertinent Virginia law is set forth in Code § 55-22, which provides:

> An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only. . . .

■■■ There is a limitation, however, upon the application of this statute. In *Copenhaver v. Rogers*, 238 Va. 361, 384 S.E.2d 593 (1989), we said:

> In order to proceed on the third-party beneficiary contract theory, the party claiming the benefit must show that the parties to a contract "clearly and definitely intended" to confer a benefit upon him. Thus, Code § 55-22 has no application unless the party against whom liability is asserted has assumed an obligation for the benefit of a third party. Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon. The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain.

*Id.* at 367, 384 S.E.2d at 596 (citations omitted). We think that the contract documents involved in this case show that the contracting parties, *viz.*, HOW CORP, HOW INSURANCE, and Good Enterprises, clearly and definitely intended to confer a benefit upon the Coberts.

Here, the focus is upon the provisions of the Risk Retention Insurance Policy issued by HOW INSURANCE to HOW CORP and to Home Warranty, a corporation, of which Good Enterprises was a member. In the insuring clause of the Risk Retention Insurance Policy, HOW INSURANCE agrees to insure against loss resulting from "Builder Default under the Home Warranty" and from " 'Major Structural Defects' of the Home which first occur after expiration of the Home Warranty and before the termination of this Policy."

■ The policy provides further that if a loss occurs and the builder defaults under the Home Warranty, the insurer will either repair, replace, or *pay to the purchaser* on behalf of the builder the reasonable cost of repair or replacement. The same option for *payment to the purchaser* applies in case a major structural defect occurs after the expiration of the Home Warranty.

■ Finally, if any doubt remains about the Coberts' status as third-party beneficiaries, the "clincher" is found in paragraph VIII of the policy, styled "Definitions." There, under a definition of "Purchaser," this statement appears: "*The Purchaser* is identified on the Certificate of Insurance and *is a beneficiary* of the Insurance Coverage provided in this Policy." (Emphasis added.)

HOW CORP and HOW INSURANCE say on brief that use of the term "beneficiary" in the definition of "Purchaser" was "inartful" and that " 'claimant' or some other similar word probably should have been used." By using the term, however, HOW CORP and HOW INSURANCE expressed their clear and definite intention to confer a benefit upon the Coberts, and they are now bound by the language they employed.[4]

Finding that the Coberts are third-party beneficiaries under the "Insurance/Warranty Documents" involved in this case, we will reverse the award of summary judgment in favor of HOW CORP and HOW INSURANCE and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

---

[4] HOW CORP and HOW INSURANCE make the point that the indefinite article "a," as opposed to the definite article "the," precedes the word "beneficiary" in the policy definition of "Purchaser." We think this attempt to avoid the obvious is entitled to no more weight than the "inartful" ploy discussed in the text.