# CIRCUIT COURT OF THE CITY OF NORFOLK

Bay Point Condominium
Association Board of Directors

v.

Mid-Atlantic Insurance Corp.

September 20, 2000

Case No. (Law) L00-948

BY JUDGE JOSEPH A. LEAFE

This matter comes before the Court on Defendant Mid-Atlantic Insurance Corporation's demurrers to certain counts of Plaintiff's Motion for Judgment. Plaintiffs originally filed suit against the Defendant Mid-Atlantic, doing business as HW10, as the Warranty Company of RML, on April 28, 2000, to recover for structural defects in the condominium units and common areas of the Bay Point complex.

RML was the general contractor who constructed the units in question. Mid-Atlantic contracted with RML ("Builder Agreement") to provide insurance in the event that there were defects in the construction of the units. In the builder agreement, RML agreed to enroll each unit that was constructed in HW10's program and HW10 would then issue a Home Protection policy to the homeowner upon occupancy. RML also agreed to be responsible for certain defects that are spelled out in the agreement. The homeowner was to make its complaint to HW10 who would then inform the builder of the problem but if the builder failed to respond, HW10 agreed to resolve the homeowner's complaint itself. Mid-Atlantic did in fact issue a Home Protection Policy ("Policy") to each condominium unit owner upon closing.

The Home Protection Policy is a separate document that lists the responsibilities of HW10 to each individual homeowner with regard to certain defects including major structural defects as defined in the policy. The individual unit owners began experiencing trouble and informed HW10 of the

problem, but they neglected to do anything about it. Plaintiffs are the Board of Directors, the Bay Point Condominium Association, and sixty individual unit owners who filed a Motion for Judgment on four different counts: (1) breach of contract by Mid-Atlantic; (2) third-party beneficiaries (plaintiffs as individual owners) of the contract between RML and Mid-Atlantic; (3) third-party beneficiary (plaintiff Bay Point Condominium Association) of the contract between the individual unit owners and Mid-Atlantic; and (4) Breach of Warranty by Mid-Atlantic. Mid-Atlantic/HW10 filed demurrers as to Counts II, III, and IV.

A demurrer tests the sufficiency of the factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). When ruling on a demurrer the Court must not evaluate or decide the actual merits of a claim. *Id.* According to the Rules of the Supreme Court, the pleading "shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 1:4(d); *see also Miller v. Grier S. Johnson, Inc.*, 191 Va. 768, 776, 62 S.E.2d 870, 874 (1951). The Virginia Supreme Court has stated that trial courts should not incorrectly short-circuit litigation at the pretrial stage by deciding the dispute without permitting the parties to have a trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993). Further, in deciding whether to grant the demurrers, the Court must accept as true all facts and reasonable inferences drawn from the Motion for Judgment. *See Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988).

Pursuant to Virginia Code § 55-22, a person who is not a party to a contract may maintain an action even though they are not named in the contract itself, if they show that the parties to the contract clearly and definitely intended to confer a benefit directly upon that person. *See* Virginia Code § 55-22; *Levine v. Selective Ins. Co. of America*, 250 Va. 282, 462 S.E.2d 81 (1995). Thus, this Code section "has no application unless the party against whom liability is asserted has assumed an obligation for the benefit of a third party." *Cobert v. Home Owners Warranty Corp.*, 239 Va. 460, 391 S.E.2d 263 (1990), quoting *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989). The statute does not purport to create a contract where none exists. *Burton v. Chesapeake Box, etc.*, 190 Va. 755, 767, 57 S.E.2d 904 (1950).

One who is a mere incidental beneficiary cannot sue thereon. *Cobert, supra.* The Virginia Supreme Court has expressly recognized that "under traditional rules, it will no doubt be difficult for a litigant . . . to meet the requirements of third-party beneficiary claims." *Copenhaver, supra* at 371.

The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow some benefit upon the third party and one of the parties to the agreement has failed to meet his end of the bargain. *Id.*; *Allen v. Lindstrom*, 237 Va. 489, 379 S.E.2d 450 (1989); *Valley Landscape Co. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977). A third person cannot maintain an action merely because that person would receive some benefit from its performance or because they are injured by a breach of the contract. *Id.* 262, quoting *Engle Acoustic & Tile, Inc. v. Grenfell*, 223 So. 2d 613, 620 (Miss. 1969) (holding that a subcontractor had no claim against an architect on a construction contract between the architect and owner). The provision sought to be invoked "must have been inserted in the contract directly or primarily for his benefit . . . ." *Id.* The four corners of the contract evidence whether the contracting parties clearly and definitely intended to benefit a third-party directly. *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037 (W.D. Va. 1987). *See also Wedgewood Homes, Inc. v. Southern Title Ins. Corp.*, 24 Va. Cir. 262 (Fredericksburg 1991) (granting demurrer and distinguishing *Cobert* from the case at issue because in *Cobert* the policy expressly stated that a "purchaser" was a beneficiary and the policy at issue contained no such language).

As to Counts II and III dealing with plaintiffs third-party beneficiary claims, Defendant argues that Plaintiffs fail to state a claim because there was no intent on the part of the contracting parties to confer a benefit on them with respect to both the contract between RML and Mid-Atlantic/HW10 (Count II) and the contract between the individual unit owners and Mid-Atlantic (Count III). Defendant asserts that this is especially true since each individual homeowner was issued their own insurance policy at the time of closing.

Plaintiffs contend that they are third-party beneficiaries and rely on *Cobert* in making these claims. In *Cobert* the plaintiffs entered into an agreement with a builder for the purchase of a home which was enrolled in a home owners warranty program. Under the program the builder issued a two year warranty to the initial purchaser that warranted the house would be free from defects due to non-compliance with approved standards. The builder purchased a risk retention insurance policy from the Home Owners Warranty Corporation ("HOW") and the plaintiffs were issued a certificate of insurance which stated that the home was insured against loss resulting from builder default and major structural defects. The plaintiffs began experiencing problems and gave notice of the defects to the builder and attempts were made to settle the dispute but to no avail. The plaintiffs then brought suit arguing that although they were not named in the actual insurance contract between

the builder and HOW, they were intended third-party beneficiaries of that contract.

The Supreme Court of Virginia agreed by concluding that the contract documents clearly and definitely showed that the parties intended to confer a benefit on the plaintiffs since the warranty provided that the insurer would "repair, replace, or pay to the purchaser" any amount on behalf of the builder in the event of default. *Cobert, supra* at 466-67. The Court also stated that the "clincher" was the policy itself. The policy defined "purchaser" as a *beneficiary* of the insurance coverage provided in the policy. *Id.* at 467. This, the Court stated, clearly and unambiguously showed that the parties intended to confer a benefit upon plaintiffs and were bound by that language.

The case at hand is similar to *Cobert* but is also distinguishable on two important grounds. First, the policy at issue in *Cobert* contained the language defining "purchaser" as a beneficiary of the policy itself. In this case, there is no such language so there can be no "clear and definite" intent inferred from the policy itself as in *Cobert*. Second and perhaps most importantly, the plaintiffs in *Cobert* had no other recourse against the builder except through the insurance company. There was no individual policy specifically issued to the Coberts. The only thing they received was "evidence," in the form of a certificate of insurance, that the home was insured against loss. They did not receive any independent policy of their own.

In the case at hand, the Builder Agreement contract between RML and Mid-Atlantic talks about how each unit must be enrolled in the warranty program and that each individual owner would receive a Home Protection Policy of their own upon closing. This negates any intent to confer some benefit directly to the individual owners with respect to the Builder Agreement, especially since each owner was in fact issued their own policy which benefits the first owner and any successor within ten years. It is the intention of the parties who made the contract that is controlling. The individual owners can only be classified as "incidental" beneficiaries of the contract since Mid-Atlantic and RML did not intend for the entire class to be third-party beneficiaries of the contract. *See e.g. Kelly Health Care, Inc. v. Prudential Ins. Co.*, 226 Va. 376, 309 S.E.2d 305 (1983). Plaintiffs have alleged in Count I that Mid-Atlantic breached the contract with them as individual condominium owners. That is the contract which controls the rights and responsibilities of the unit owners and the insurance company. Therefore the demurrer to Count II is sustained.

Count III states that plaintiff Bay Point Association Board of Directors, instead of the individual owners, are third-party beneficiaries of the contract between Mid-Atlantic and the individual owners. Plaintiffs argue that since

the Board of Directors is responsible for maintenance upon the common elements of the condominium and the Home Protection Policy covers the common elements, they are intended third-party beneficiaries. As stated earlier, a clear intent to benefit the third person must appear to enable that person to sue on the contract. *See Valley Landscape Co. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977). An intended beneficiary is one who is such an integral part of the obligations assumed by the contracting parties that they may sue thereon. *Radosevic, supra.* The Home Protection Policy provides specific coverage for the common areas. Language in the policy about "common areas" clearly expresses the requisite intent necessary for the association to maintain a third-party beneficiary claim. It even provides a mechanism for a majority of unit owners to maintain an action for common area claims prior to the formation of the unit owners association. Therefore the demurrer to Count III is overruled.

Plaintiffs further allege in their Motion for Judgment that Mid-Atlantic/HW10 warranted to the unit owners and association that it would fulfill RML's warranty obligations in the event RML did not. RML failed to do so and Mid-Atlantic denied plaintiffs claims pursuant to two different sections of the Limited Warranty given to plaintiffs in connection with their Home Protection Policy. Plaintiffs assert that the contract between RML and Mid-Atlantic is a warranty and since it failed to fulfill its obligations under the contract, HW10 breached its warranty to plaintiffs.

Defendants argue that a contract that provides warranty coverage contains all of the coverage that was intended by the parties; therefore, there are no warranty claims that plaintiffs can bring against Mid-Atlantic other than those in the Home Protection Policy. Essentially, Mid-Atlantic breached its contract with the plaintiffs but never gave any warranties to plaintiffs so there is no warranty that could have been breached.

As a general rule, a plaintiff seeking to recover for any breach of warranty must prove the terms of the warranty and the facts which constitute a breach of that warranty. *Collier v. Rice*, 233 Va. 522, 356 S.E.2d 845 (1987). Even at the demurrer stage, Plaintiffs must allege sufficient facts that would support a finding that a warranty was created by Mid-Atlantic and that the warranty was breached. The problem here is that Mid-Atlantic made no warranty to the plaintiffs; it only contracted to fulfill the obligations under the builder's warranty if the builder did not do so. This is not a separate warranty but merely a term of the contract.

The warranty was the builder's. The Home Protection Policy provides within its terms coverage to the unit owners for the builder's failure to do so. Defendant assumed the risk of loss if RML failed to fulfill its warranty

obligations, which is the nature of an insurance contract. *Lawyers Title Ins. Corp. v. Norwest Corp.*, 254 Va. 388, 493 S.E.2d 114 (1997). Therefore the demurrer to Count IV, breach of warranty by Mid-Atlantic, is sustained.

In conclusion, the demurrers to Counts II and IV are sustained and the demurrer to Count III is overruled.