# CIRCUIT COURT OF THE CITY OF NORFOLK

Bay Point Condominium
Association, Inc., et al.

v.

RML Corp.
and Dryvit Systems, Inc.

Case No. (Law) L99-475

BY JUDGE JOSEPH A. LEAFE

January 30, 2001

This matter comes before the Court on Defendant Dryvit's demurrers and special pleas with respect to RML's Cross-Claim. RML, the general contractor of the project known as Bay Point, filed a cross-claim against Dryvit consisting of seventeen different counts. RML further alleges that Bishop Wall Systems ("Bishop"), the supplier of Dryvit to Kemp Contracting, is the agent of Dryvit and therefore Dryvit is liable under a number of the seventeen counts as principal. Dryvit demurs to these claims and also makes special pleas regarding the statute of limitations with respect to some claims. The specific claims are as follows:

Count I: Negligence;
Count II: Breach of Warranties;
Count III: Reckless Misrepresentation;
Count IV: Third-party Beneficiary of Contract;
Count V: Consumer Protection Act;
Count VI: Fraud;

Count VII: Breach of Contract;
Count VIII: Deceptive Advertising;
Counts IX, X: Actual Agency and Apparent Agency of Bishop;
Count XI: Negligence (as principal of Bishop);
Count XII: Breach of Warranties (as principal);
Count XIII: Consumer Protection Act (as principal);
Count XIV: Breach of Contract (as principal);
Count XV: Reckless Misrepresentation (as principal);
Count XVI: Fraud (as principal);
Count XVII: Deceptive Advertising.

### Counts I and XI: Negligence

Tort actions are inappropriate when the claim is for purely economic losses and here, the Court has held in an earlier opinion, that the "effect of the alleged failure of the substandard parts to meet the bargained-for level of quality caused a diminution in the value of the condominium complex, measured by the cost of repair."[1] This is a purely economic loss claim for which the law of contracts provides the sole remedy. *Sensenbrenner v. Rust, Orling & Neale Architects*, 236 Va. 419, 374 S.E.2d 55 (1988). Further, in the case at bar, since no cause of action for negligence exists against Dryvit, RML cannot seek contribution or indemnification from them as to this claim. *See Virginia Elec. and Power Co. v. K. F. Wilson*, 221 Va. 979, 981, 277 S.E.2d 149 (1981). Counts I and XI are dismissed with prejudice.

### Counts II and XII: Breach of Implied Warranties

Defendant Dryvit argues that implied warranties apply only to sales of goods, not real estate and this case only involves real estate. *Bruce Farms, Inc. v. Coupe*, 219 Va. 287, 292, 247 S.E.2d 400, 403 (1978) (stating that a conveyance of real estate carries no covenants except those expressly made). Dryvit also makes several other arguments which the Court has reviewed. In the Court's previous opinion dated July 18, 2000, the Court overruled Dryvit's demurrers to these Counts as to Plaintiff's Amended Motion for Judgment but allowed plaintiffs to seek only direct economic loss damages and not consequential damages as consequential damages can only be recovered if there is privity of contract. That same rule applies to RML. Direct damages are recoverable, however consequential damages shall not be recoverable. The

---

[1]  52 Va. Cir. 432, 437 (July 18, 2000).

question of whether or not this is a case involving "goods" or purely "real estate" will not be decided at the demurrer stage. Therefore, Counts II and XII are sustained to the extent RML seeks direct damages, but not consequential damages.

### Counts III and XV: Reckless Misrepresentation

In Virginia, this is not a separate cause of action. However "[a] reckless misrepresentation" may constitute fraud. *Bradley v. Tolson*, 117 Va. 467, 85 S.E.2d 466 (1915); *Winn v. Aleda Const. Co.*, 227 Va. 304, 315 S.E.2d 193, 195 (1984) (stating that Virginia law defines fraud as the *reckless misrepresentation* of a material fact). It appears that the appropriate cause of action is one of fraud not reckless misrepresentation and RML pleads fraud in Count VI against Dryvit and Count XVI against Dryvit as Bishop's agent which is addressed below. Counts III and XV are dismissed with prejudice.

### Count IV: Third-Party Beneficiary of Contract

Pursuant to Virginia Code § 55-22, a person who is not a party to a contract may maintain an action even though they are not named in the contract itself, if they show that the parties to the contract clearly and definitely intended to confer a benefit directly upon that person. *See* Virginia Code § 55-22; *Levine v. Selective Ins. Co. of Am.*, 250 Va. 282, 462 S.E.2d 81 (1995). Thus, this Code section "has no application unless the party against whom liability is asserted has assumed an obligation for the benefit of a third party." *Cobert v. Home Owners Warranty Corp.*, 239 Va. 460, 391 S.E.2d 263 (1990), quoting *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989). One who is a mere incidental beneficiary cannot sue thereon. *Cobert, supra.* A third person cannot maintain an action merely because that person would receive some benefit from its performance or because they are injured by a breach of the contract. *Copenhaver*, 238 Va. at 362. RML alleges "upon information and belief" that Dryvit and Kemp Contracting entered into an agreement under which Kemp would be educated, trained, instructed, etc. by Dryvit in exchange for Kemp's services, RML's Cross-Claim, para. 40, and that pursuant to the agreement, Dryvit and Kemp "knew that RML would benefit from the agreement and could be harmed by any breach of the agreement by either party." *Id.* at 41. This is insufficient to establish a claim as third party beneficiary of an alleged contract. Count IV is dismissed with prejudice.

## Counts V and XIII: Violation
of the Consumer Protection Act

This claim also fails. In its previous opinion (July 18, 2000), this Court ruled that the transaction at issue was a commercial transaction involving non-consumer goods based on the holding in *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 27 Va. Cir. 62 (Fairfax 1992). The opinion states that the EIFS was sold by Dryvit to RML for use in construction of the complex and such use cannot be characterized as "personal, family, or household" use. Therefore, the transaction is not covered by the provisions of the VCPA. Counts V and XIII are dismissed with prejudice.

## Counts VI and XVI: Actual Fraud

In support of their fraud claim(s) RML alleges that Dryvit made direct and indirect representations to consumers, including plaintiffs and RML, that were materially false and misleading. Cross-Claim, para. 51. These false representations included statements regarding its durability, quality, the application and training of applicators, the low maintenance quality of EIFS, the adequacy of Dryvit's testing of barrier EIFS, the history of water intrusion problems, the information about how the industry would respond to water intrusion, the fact that it was cost effective, and others. Cross-Claim, paras. 52-55. RML further asserts that Dryvit was under a duty to disclose this information to plaintiffs and RML because, among other reasons, Dryvit was in a superior position to know the true facts and hidden defects of the EIFS and its repercussions upon purchase and because the defects were latent and would not immediately appear. Cross-Claim, para. 56. RML justifiably relied on these false, willful, and reckless representations set forth as evidenced by the installation of EIFS on the condos. Cross-Claim, para. 53.

The elements of actual fraud are: (1) a false representation; (2) of a material fact, (3) made intentionally or knowingly; (4) with intent to mislead; (5) reliance by the misled party, and (6) injury to the misled party. *Winn v. Aleda Const. Co.*, 227 Va. 304, 315 S.E.2d 193 (1984). A claim of fraud must be pleaded with particularity. *Mortarino v. Consultant Eng'g Services*, 251 Va. 289, 467 S.E.2d 778 (1996). RML does allege that misrepresentations were made; however, they do not state when, where, etc. It is not even clear whether RML themselves decided to use Dryvit's EIFS or whether that decision was made by someone else which would defeat any reliance. In any event, the allegations are insufficient to establish a claim of fraud against Dryvit. Counts VI and XVI are dismissed with prejudice.

### Counts VII and XIV: Breach of Contract

RML alleges that they entered into a contract with Dryvit through its agent, Bishop Wall Systems, for the purchase of EIFS materials. Cross-Claim, para. 62, referencing Exhibit One (joint payment agreement). Further, that Dryvit contractually agreed to provide RML materials that were fit for the purpose intended and of merchantable quality and Dryvit breached such contract by failing to provide fit materials. Paras. 63, 64. There are insufficient allegations to establish that Dryvit entered into an actual contract with RML. Even if Bishop is Dryvit's agent and signed in that capacity, the agreement that RML relies on is simply a joint payment agreement, not a contract which agrees to provide fit and merchantable materials. These claims are appropriately raised as breach of implied warranties. Counts VII and XIV are dismissed with prejudice.

### Counts IX and X: Actual Agency and Apparent Agency

RML alleges in these two counts that Bishop is the actual or apparent agent of Dryvit. "Upon information and belief, RML is informed and believes and therefore alleges that Bishop is the actual [and apparent] agent of Dryvit Systems, Inc." Cross-Claim, paras. 72, 108. Agency is not a cause of action but is instead a legal relationship between two persons that arises out of an agreement or some representation by one person that another is his agent. Counts IX and X are dismissed with prejudice.

### Count VIII and XVII: Deceptive Advertising

The Court ruled in its July 18th opinion that this claim is governed by the limitations period set forth in Virginia Code § 8.01-248. This section states that "[e]very personal action accruing on or after July 19, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued." *Id.*; Va. Code § 8.01-248. Further in *Purcell v. Tidewater Const. Corp.*, the Virginia Supreme Court stated that simply dividing all personal injury actions into either injuries to persons or property would render Va. Code § 8.01-248 meaningless. 250 Va. 93 (1995). Virginia Code § 8.01-230 governing the accrual of rights of action states that the right of action is deemed to accrue and the limitations period begins to run from the date the injury is sustained. Therefore RML's right of action against Dryvit accrued from the date they purchased the EIFS and in order for this

claim to be time-barred, the EIFS must have been purchased prior to June 28, 1997.

In an Interrogatory propounded to the plaintiffs by RML (Interrogatory No. 5), plaintiffs state that RML selected the EIFS for cladding the exterior walls of the condominiums. (See Dryvit's Demurrer to Plaintiff's TAMJ, Exhibit 41, p. 7.) Further, documents produced and interrogatories answered by Kemp Contracting show that EIFS application began on August 25, 1995, and that Kemp was billing RML for its application as early as September 27, 1995. (Exhibit 42, No. 6.) The fact that the EIFS was being applied in 1995 shows that the construction began prior to 1996 and that the EIFS was sold to RML or an agent sometime prior to August 25, 1995. Therefore this claim is dismissed with prejudice as it is time-barred.

### *Plaintiff's Motion to Reconsider*
### *Deceptive Advertising Claim*

The plaintiffs have also asked the Court to reconsider the ruling against them as to the deceptive advertising claim. They assert that many of the closings on the condos occurred after June 28, 1997. They have also attached a list of units that were closed after the date of June 28, 1999, and assert that those unit owners should have a claim.

The Court has determined that the applicable date to start the running of the limitations period is when either the plaintiffs or their agent purchased the EIFS or decided to use it on the condos, not the date when each individual plaintiff decided to purchase a condo. This date was previous to the first application by Kemp which was on or about August 25, 1995. Further, the plaintiffs themselves did not purchase any EIFS. The Court has considered the arguments of plaintiffs and denies their Motion to Reconsider.

### *Conclusion*

In sum, all counts alleged by RML against Dryvit are hereby dismissed with prejudice with the exception of Counts II and XII (breach of implied warranties) to the extent RML claims direct damages only. Plaintiff's Motion to Reconsider the deceptive advertising claim is hereby denied.

### March 30, 2001

Plaintiffs are the Bay Point Condominium Association, Inc., and its Board of Directors. The current owners of the Spyglass Units assigned their causes

of action to the plaintiffs pursuant to Va. Code § 59-79.80(B), which makes the Board attorney-in-fact for the unit owners. Plaintiffs bring this suit against Dryvit, the manufacturer of the EIFS, and RML, the developer and builder of the Bay Point complex, to recover for alleged defects in the Units and Common Elements of the condos, i.e. leaks, poor workmanship, failure to meet building code standards, rotten structural components, etc. RML *selected* to use the EIFS for the cladding of the exterior walls of the units. Kemp installed the EIFS in the Bay Point units. Plaintiffs themselves were not involved in the decision to use or select the EIFS. Plaintiffs also never purchased any EIFS directly from anyone involved in the case.

Many motions have been made in this case and decisions rendered. The Court will not repeat its earlier rulings and facts related thereto unless it becomes necessary. Currently before the Court is Dryvit's Motion for Summary Judgment with respect to the only two remaining claims against them: (a) breach of the implied warranty of merchantability; and (b) breach of the implied warranty of fitness for a particular purpose. Both of these "implied" warranties can only arise under the Uniform Commercial Code as adopted by Virginia.

Dryvit argues that plaintiff's claims fail as a matter of law. Dryvit contends that, when the plaintiffs purchased their condominium units, the EIFS had already been incorporated into realty. The parties agree that the plaintiffs purchased completed condominium units. Dryvit contends then that, since the plaintiffs purchased real estate from RML, the UCC does not apply to the claims against Dryvit. *See* Dryvit's Motion for Summary Judgment at 6. Dryvit asserts that the focus of the inquiry must be on the transaction involving the sale of the completed unit to the plaintiffs. Plaintiffs argue that the determination of whether something is a "good" or not should be made at the time the EIFS was purchased by either the contractor or supplier from Dryvit and then sold to RML. Essentially, the plaintiffs argue that the initial transaction(s) should be the focus of the inquiry. The plaintiffs further contend that the focus should be on the first transaction(s) because in this case, the EIFS remained a distinct product, that being "maintenance free Dryvit." The plaintiffs were the only intended parties to take advantage of such manufacturer warranties. Further, plaintiffs argue that Virginia's broad anti-privity statute, Virginia Code § 8.2-318, shows the public policy of allowing injured consumers to sue remote manufacturers in these situations. Plaintiff's

Motion in Opposition at 16. RML and Kemp also oppose Dryvit's Motion for Summary Judgment.

*Discussion and Law*

A. *Standard for Summary Judgment*

Under Rule 3:18 of the Rules of the Virginia Supreme Court, either party may make a Motion for Summary Judgment and the trial court may grant such motion if it appears that the moving party is entitled to judgment as a matter of law. Code of Virginia, Rules of the Supreme Court, Rule 3:18 (2000). A trial court, in considering a Motion for Summary Judgment, must adopt those inferences from the facts that are most favorable to the nonmoving party, unless those inferences are forced, strained, or contrary to reason. *Dickerson v. Fatehi*, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). A party is entitled to Summary Judgment only where the record, taken as a whole, could lead a rational trier of fact to only one conclusion. *Dickerson*; *see also Stevens v. Howard D. Johnson Co.*, 181 F.2d 396 (4th Cir. 1950); *Hill v. Diamond*, 203 F. Supp. 877 (E.D. Va. 1962). Summary Judgment is not appropriate and shall not be granted if any material fact is genuinely in dispute. *Dickerson*, 253 Va. at 327.

B. *Whether the subject matter at issue can be classified as "goods" so as to implicate the UCC implied warranties.*

The Virginia Uniform Commercial Code applies to transactions in goods. Va. Code § 8.2-102. The term "goods" is defined to mean all things (including specially manufactured goods) which are *moveable at the time of identification to the contract* for sale other than the money in which the price is to be paid. Va. Code § 8.2-105(1). Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future" goods. A purported present sale of future goods or of any interest therein operates as a contract to sell. Section 8.2-105(2). Moreover, the UCC does not apply to the creation or transfer of an interest in or lien on real estate. Section 8.9-104(j).

As stated above, Dryvit argues that the transaction at issue in this case involved real estate and not goods. Therefore the UCC does not apply. In *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, the Virginia Supreme Court held that a homeowner could not recover against the pool installer or the architect for damages to the foundation of their home where the pool installer

and architect were not in privity with the home purchaser. 236 Va. 419, 424-25, 374 S.E.2d 55 (1988). The Court had to determine whether the faulty installation of the pool and the resulting damage was purely economic loss. *Id.* at 423. If the damages were purely economic, which the Court ultimately found, then the plaintiffs could not bring the action to recover in tort without privity. The plaintiffs in *Sensenbrenner* tried to argue that the anti-privity statute applicable to products liability cases eliminated this requirement (similar to the anti-privity statute in this case). The Court disagreed and concluded that "[a]lthough sales of real estate are not controlled by product-liability concepts in other respects, the rule limiting recovery for economic losses to the law of contracts does apply to sales of real property alleged to be ... defective." *Id.* at 424-25. Therefore, since the plaintiffs were not in privity with either the architect or the pool installer and the damages were purely economic, the plaintiffs' claim failed. *Id.* at 425; *see also Blake Const. Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987) (holding that the anti-privity statute applicable to actions for damages to persons or property resulting from negligence was not applicable to claims for purely economic losses). While *Sensenbrenner* and *Blake* are not instructive to the current issue, it does show a certain "attitude" of the Virginia Supreme Court. As a side note, this Court has previously ruled that plaintiffs' damages are purely economic.

In *Providence Village v. Amurcon-Loudoun Corp.*, certain fire retardant treated plywood ("FRTP") used in the construction of the plaintiffs' homes was at issue. 33 Va. Cir. 165 (1994). The plaintiffs sued the manufacturer and treater of the plywood, Hoover, and also the supplier, Lowe's. The plaintiffs sought to recover for breach of express and implied warranties under the UCC. As in the case at bar, the plaintiffs in *Amurcon* were neither in horizontal privity nor vertical privity with the manufacturer and supplier but relied on the anti-privity statute codified in Virginia Code § 8.2-318. *Id.* That section states:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages brought for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller *might reasonably have expected to use, consume, or be affected by the goods.*

The parties did not dispute the fact that the term goods did not include real estate or anything *not moveable* at the time of identification. *Id.* The argument

pertained to which transaction should be the focus of the inquiry. Plaintiffs argued that the responsibility for product safety and usefulness is, or should be, placed on the manufacturer. The Court stated the following in summary:

> [I]t should be noted that, in order for the anti-privity provisions of § 8.2-318 to be effective, there must be a sale of goods. The sale of a condominium with FRTP as a component part is not a sale of goods. Similarly, the building materials incorporated in the ... unit are no longer subject to U.C.C. warranties as a result of the conveyance of property. This sale is governed by other statutory warranties of the builder (Declarant). Whether or not the statute is applicable to a given plaintiff will depend upon the facts of the individual case [and the question of privity].

*Id.* at 170. The Court however held that the plaintiffs had alleged sufficient facts to survive a *demurrer* as to any claim on implied warranties. *Id.*

That same Court subsequently decided *Board of Directors of Providence Village Condo. Assn. v. Allied Plywood Corp.*, 37 Va. Cir. 192 (1995). The Circuit Court, Judge Horne, denied plaintiffs claim against the manufacturer of the plywood at issue. The plaintiffs sought judgment from the defendants for breach of certain warranties under the UCC. The Court first analyzed the broad anti-privity statute adopted in Virginia, Va. Code § 8.2-318. The Court acknowledged that the broad language of this statute may encompass the situation in that case, i.e. lack of horizontal and vertical privity between the homeowners and the manufacturer. However, the Court held against the plaintiffs on the ground that in order for that statute to apply, the transaction must have involved "goods" and the transaction at issue did not. *Id.* Therefore the UCC warranties did not apply.

In making the determination that the fire retardant plywood was no longer a "good" once incorporated into the realty, the Court relied heavily on another circuit court opinion, *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22 (1992) (dealing with the anti-privity statute § 8.2-318). The facts in *Winchester* were very similar to those in *Providence* and also to the case at bar, namely that Winchester Homes sought recovery from several defendants, including the manufacturer of the plywood at issue, for the alleged defects in the plywood used in building the roofs of the townhomes. *Id.* The Court denied recovery against the manufacturer. Both *Winchester* and *Providence* involved homeowners or someone suing in their place. The *Providence* Court went on to discuss that each scenario centered around two transactions: the

sale of the home to the homeowner and the sale of the plywood to the builder. *Providence, supra.*

The Court stated "were the focus of the inquiry to be on the sale to the builder, the broad anti-privity provisions of the [UCC] might, under certain circumstances, afford relief to the homeowner as a person affected by the goods" even though they are not in the distributive chain. The Court also noted that clearly the transaction between the builder [here RML] and the distributor or manufacturer [Bishop and Dryvit] was one that involved goods. However, in relying on the decision in *Winchester*, the Court focused on the second transaction, the sale of the completed home, as determining the rights of the parties with respect to warranties under the UCC. *Id.*

In *Winchester*, the Court stated:

> If the first transaction is focused on, the homeowners in this case would likely fall within the language of the anti-privity statute because the [fire retardant plywood] constituted "goods" at that time and the homeowners were "persons whom the manufacturer . . . might reasonably have expected to use, consume, or be affected by the goods."

*Winchester*, 30 Va. Cir. at 30. The Court, however, stated that the sale of the plywood was not made in isolation, meaning that the plywood was later incorporated into realty. *Id.* "[I]f the UCC was interpreted to apply to components incorporated into realty, the result would be extraordinary." *Id.* at 31. Further:

> Another policy reason § 8.2-318 should not be interpreted to apply to building components (i.e. drywall, mortar, and plywood) is that component manufacturers would then become primary warrantors of residential housing instead of developers, and such a change would have broad economic consequences. . . . Rather, purchasers receive consumer protections under Virginia Code § 55-70.1 from the developer. . . . If the UCC implied warranties . . . pass through to the purchaser of residential housing, the developer would have no incentive to extend warranties.

*Id.* Therefore the Court in *Winchester*, and later the Court in *Providence*, held that the General Assembly has not sufficiently indicated the intent to extend § 8.2-318 to include building components. *Id.* at 33. Therefore, no warranties under the UCC applied. *Id.* Where a change in the law is significant, the

proper forum to address the issue is the General Assembly and not the courts. *Id.* at 32; *see also MacConkey v. F. J. Matter Design, Inc.*, Record No. CL98-2582 (Virginia Beach Circuit Court, Feb. 8, 2000) (per Judge Shockley) (applying the *Winchester* decision by holding that the plaintiffs UCC implied warranty claim failed because the *EIFS* was incorporated into realty and no longer a good); *Margarito v. Life Products Corp.*, 1998 WL 171332 (E.D. Va. 1998) (holding that UCC warranties apply only to sale or lease of goods and not to real property). The Virginia Supreme Court denied a petition for appeal in the *Winchester* case.

Section 55-70.1 of the Virginia Code, which creates a right of action for consumers against the builder/declarant of homes, condos, etc., has since been amended. Subsequent to the *Winchester* decision, the General Assembly amended the section to allow a direct cause of action by the homeowner against the manufacturer of such "roof sheathing" for any breach of such warranty. Section 55-70.1(G). That section specifically states:

> In the case of new dwellings where fire-retardant treated plywood sheathing or other roof sheathing materials are used in lieu of fire-retardant treated plywood, the vendor shall be deemed to have assigned the manufacturer's warranty to the vendee. The vendee shall have a direct cause of action against the manufacturer of such roof sheathing for any breach of such warranty.

*Id.* This section applied to causes of action filed after July 1, 1994, and, therefore, did not apply in the cases cited above. The Court in *Providence* did state however that this section demonstrated that the previous statutory framework did not provide homeowners with a cause of action against the manufacturers of FRTP.

In *MacConkey v. F. J. Matter Design, Inc., et al.*, the Virginia Beach Circuit Court, Judge Shockley, held that the plaintiff's claim for breach of implied warranty against the manufacturer of "EIFS," the STO Corporation, failed. Record No. CL98-2582 (Va. Beach Cir. Ct., February 8, 2000). The Court again relied on *Winchester Homes* and held that the UCC protections do not cover goods used for construction once incorporated into realty. *Id.* The Court also noted in a footnote that the General Assembly amended the statute after the *Winchester* decision and, more specifically, stated that "it [the General Assembly] has not extended the statute in regards to other construction materials that are incorporated into realty." *Id.*, n. 4.

Plaintiffs argue that Virginia does recognize a cause of action by remote purchasers against the manufacturer for defective products. It is true that Virginia law recognizes breach of warranty claims by purchasers of certain products in certain situations. For example, plaintiffs cite *Eagles Court Condominium Unit Owners Assn. v. Heatilator, Inc.*, 239 Va. 325, 389 S.E.2d 304 (1990). In *Eagles Court*, the plaintiffs were the condominium association and its board of directors. They sued the manufacturer, designer, and installer of the fireplace systems incorporated into the units. *Id.* One of the fireplace systems malfunctioned causing a fire in one unit, which subsequently spread to other units. *Id.* The Court had to determine the applicability of Code § 8.01-250 and whether or not the claim was barred by the statute of limitations and the statute of repose. *Id.* at 326-27. There was, however, no discussion of implied warranties under the UCC; the plaintiffs in *Eagles Court* sued under negligence theories of liability which was applicable since there was injury to property. Also in *Jeld-Wen, Inc. v. Gamble*, the Virginia Supreme Court allowed a remote purchaser, the mother of a thirteen month old child, to sue the manufacturer of a window and window screen on theories of negligence and breach of implied warranty. 256 Va. 144, 501 S.E.2d 393 (1998). The child accidentally fell through the screen and suffered severe and permanent injuries. The Court stated that "the standard of safety of goods imposed on . . . the manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence. The product must be fit for the ordinary purposes for which it is to be used." *Id.* at 148. Dryvit responds by asserting that there was no discussion about "goods" and implied warranties because clearly the window and a window screen remain "goods" within the meaning of the UCC even though incorporated into the realty (i.e. remains moveable).

Plaintiffs also cite to *General Bronze Corp. v. Kostopulos*, 203 Va. 66, 122 S.E.2d 548 (1961). This case involved allegations against the manufacturer of sliding glass doors (and others) that had been installed in the plaintiff's motel, namely that the doors were defective. The Supreme Court of Virginia held that no implied warranty of merchantability or fitness for a particular purpose could be maintained against the manufacturer for lack of privity between the parties. *Id.* at 70. Plaintiffs argue that, since this decision, the anti-privity statute has been enacted to allow plaintiffs such as those in *General Bronze* to pursue actions against the manufacturer involving "building components." However, the Court is of the opinion that sliding glass doors maintain their character as "goods" much like windows and screens maintain their character as "goods." RML cites *Armco, Inc. v. New Horizon Devel. Co. of Va., Inc.*, 229 Va. 561, 41 UCC Rep. Serv. 367 (1985). In

*Armco* the suit was initiated by the buyer against the seller under the UCC for the sale of pipes by the manufacturer, Armco, to a construction company. This case involved a transaction between "merchants" and therefore the UCC applied. *Armco* did not involve a manufacturer and remote consumer purchasers alleging defects in building components later incorporated into a home.

Plaintiffs also argue that other jurisdictions appear to allow a cause of action against the manufacturer by remote purchasers. *Basham v. Shale,* 180 W. Va. 526, 377 S.E.2d 830 (1988). In *Basham,* the plaintiffs filed suit against General Shale Products Corp., the manufacturer of allegedly defective bricks, which were used in the construction of the plaintiffs' homes and places of business. The defendant moved to dismiss on the grounds that the statute of limitations had run or in the alternative that the plaintiffs had no cause of action under the Uniform Commercial Code, W. Va. Code § 46-1-101. The Court discussed the options for the plaintiff, including strict tort liability, and concluded that a party who suffers pure economic loss as a result of a defective product must turn to the UCC for relief. *Id.* at 531. Therefore it appears that West Virginia allows the purchaser/owner to pursue a cause of action for breach of warranty against the manufacturer of a product even though it has been incorporated into realty and loses its distinct characteristic. *See also Docteroff v. Barra Corp.,* 282 N.J. Super. 230, 659 A.2d 948 (1995) (allowing plaintiffs to proceed with a cause of action based on warranty as the case involved the sale of goods, a faulty roof).

In *Dighton v. Federal Pacific Elec. Co.,* the Court analogized a circuit breaker panel to a "good" within the meaning of the UCC. 399 Mass. 687, 698-99, 506 N.E.2d 509 (Mass. 1987). The plaintiffs sought recovery from the electric company who manufactured and designed the breaker. The breaker subsequently caused a fire in plaintiff's apartment building. A number of issues and statutes were addressed in that case including whether the Massachusetts statute of repose applied to limit tort liability of architects and building contractors. *Id.* at 688. The Court stated that the limits of tort liability of a manufacturer who supplied a building component that became an integral part of a building later destroyed are governed by the UCC rather than a statute of repose which applies to architects and building contractors. *Id.* at 698. However that same jurisdiction decided against the plaintiffs in *Drieblatt v. Osmose, Inc., and Hoover Treated Wood Products, Inc.,* 2001 WL 197941 (D. Mass. Feb., 12, 2001). In *Drieblatt,* a condo association sued the manufacturer of fire retardant plywood sheets used in the construction of the units. The plaintiffs alleged breach of implied warranties of merchantability and fitness for a particular purpose based upon the Massachusetts version of

the UCC. *Id.* The United States District Court for the District of Massachusetts interpreting Massachusetts law agreed with defendant to exclude coverage to the sale at issue because it involved the sale of *realty. Id.* at *3.

Further in *Santor v. A & M Karagheusian, Inc.*, the plaintiff sued the manufacturer, retailer, and distributor of carpeting that was installed into plaintiff's home which turned out to be defective. 44 N.J. 52, 207 A.2d 305 (1965). The plaintiff subsequently sued A & M for breach of an implied warranty of merchantability. *Id.* at 57. The trial court decided that there was an implied warranty from the manufacturer despite the lack of privity between plaintiff and the manufacturer. The defendant argued that privity of contract was required since this was not a case involving a dangerous product that could cause injury. The Court of Appeals reversed the trial court on that ground and the New Jersey Supreme Court later reversed and reinstated the verdict in favor of the plaintiff. *Id.* In reversing the Court of Appeals, the Supreme Court stated:

> There is no doubt that the great mass of warranty cases imposing liability on the manufacturer regardless of privity were concerned with personal injuries to the ultimate consumer. [Citations omitted.] But we see no just cause for recognition of the existence of an implied warranty of merchantability and a right of recovery for breach thereof regardless of lack of privity of the claimant in one case and the exclusion of recovery in the other simply because loss of value of the article sold is the only damage resulting from the breach.

*Id.* at 59. The Court reasoned that, since the manufacturer is the father of the transaction and puts the article in the channels of trade for sale, the manufacturer should be liable. *Id.* at 59-60. The Court saw no sound reason or policy for the plaintiff to have to sue the seller then have the seller sue the distributor and/or manufacturer, etc. "We agree pursuit of this wasteful and frequently inadequate process should not be required in New Jersey." *Id.* at 62. The implied warranty is a much simpler and more convenient legal device to accomplish the same goal of getting to the person responsible. *Id.* at 63. However *Santor* is distinguishable from the case at bar. *Santor* dealt with "carpet" which maintains a distinct character as a good and is incorporated into the realty in a different context than plywood or EIFS. *See Morris v. Osmose Wood Preserving*, 340 Md. 519, 667 A.2d 624 (1995) (affirming dismissal of implied warranty claims under the UCC because plaintiffs were never buyers of *goods* (plywood installed into townhomes); the plywood

ceased to be goods because it became a permanently affixed part of the townhouse and was no longer moveable and plaintiffs bought the plywood only as *part* of a sale of an entire house); *Southcenter View Condominium Owners' Assn. v. Condominium Builders, Inc.*, 47 Wash. App. 767, 736 P.2d 1075 (1986) (affirming the lower court's granting of summary judgment in favor of defendants to plaintiff's breach of warranties claim stating that the code is not applicable to real estate).

In sum, the parties are in disagreement as to what transaction should be focused on and whether or not the EIFS is a good within the meaning of the UCC. There are cases to support the plaintiffs position; however, those cases involved products that remained a "good" of some sort, i.e. moveable and distinct. The Court recognizes that Virginia has a broad anti-privity statute under the UCC; however, the product at issue must still be a good. Dryvit maintains that the statute does not apply in this case because the product was incorporated into realty. The Court has thoroughly considered the cases, briefs, and arguments of counsel and agrees with the other circuit court decisions such as *Winchester, Providence Village*, and *MacConkey*. The EIFS at issue in this case was a good at one time, but once it was incorporated into the walls of the units it ceased to be a "good" in that it lost any distinctive characteristic it once had. To hold otherwise would be to hold that any "building component" used in the construction of any building contains a manufacturer's warranty applicable to remote plaintiffs simply because it was a good at some time. If this was the intent of the legislature in enacting the anti-privity statute, then the General Assembly is the proper forum to specifically address the issue regarding building components incorporated into realty.

Plaintiffs contend that this Court's earlier ruling and opinion dated July 18, 2000, is instructive to the present issue(s). In that opinion, the Court did discuss Virginia's anti-privity statute, § 8.2-318. However, in that opinion, the Court cites to *Coakly & Williams, Inc. v. Shatterproof Glass Corp.*, to state that whether or not the alleged warranty agreements are for the sale of goods cannot be decided at the demurrer stage. 706 F.2d 456 (4th Cir. 1983). Therefore the Court "treated" it as an agreement for the sale of goods for purposes of resolving the issues before the Court at that time. Those issues were namely whether the plaintiffs could maintain a cause of action for breach of warranty in light of the anti-privity statute and whether or not the plaintiffs could recover both direct and consequential damages under a breach of

warranty theory. The opinion did not resolve the question of whether the transaction at issue was one involving "goods."

Kemp Contracting also contends that the condominium declarations set the rights and duties of each successor for the original declarant. Kemp's Motion at 4. Kemp asserts that one of the rights provided to the Association is the right to pursue *any actions*, which may have been available to RML, and further that lack of privity is no defense. *Id*. Therefore, as RML purchased the "goods" at issue (according to Kemp) the association has the ability to stand in the shoes of RML and pursue the action for implied warranties. Kemp further argues that the cladding at issue is property owned by the condominium and is considered a common element owned and maintained by the Association, not the individual owners. The condo declaration "clearly provides that the exterior of the condominium buildings are limited common elements." Kemp's Motion at 7. Therefore the EIFS is separate from the units themselves and did not merge with the individual units. *Id*.

Kemp relies on Section 9.2 of the Declaration and Amendments. However Section 9.2 deals mainly with the obligations and liabilities of the transferor and states that lack of privity is no defense to such obligations if enforced by the unit owner against the transferor. Section 9.2(b)(1) states:

> **(b)** Upon transfer of any special declarant rights, the liability of a transferor Declarant is as follows:
>
> (1) A transferor is not relieved of any obligation or liability arising before the transfer and remains liable for warranty obligations imposed upon him by the Condominium Act. *Lack of privity (direct contractual relationship) does not deprive any Unit owner of standing to bring an action to enforce any obligation of the transferor.*

This section does not purport to transfer the right to pursue any cause of action RML may have to the plaintiffs. Further, Kemp argues that the cladding is not a part of the individual unit and is merely a common element. Therefore, according to Kemp, the owners have no interest in it. The deeds and declarations themselves contradict that assertion.

Dryvit's Motion for Summary Judgment on the claims of breach of the implied warranty of merchantability and fitness for a particular purpose is hereby granted.